[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13325

_____

D.C. Docket No. 1:09-cr-20327-JLK-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL J. MUZIO,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 8, 2014)

Before TJOFLAT and WILSON, Circuit Judges, and COOGLER,[*] District Judge.

WILSON, Circuit Judge:

This case requires us to answer a jurisdictional question left open by the

Supreme Court in *Dolan v. United States*, 560 U.S. 605, 130 S. Ct. 2533 (2010).

_____

[*] The Honorable L. Scott Coogler, United States District Judge for the Northern District
of Alabama, sitting by designation.

Specifically, we must determine whether we have jurisdiction to hear appeals from judgments sentencing a defendant to a term of imprisonment and indicating that restitution will later be ordered but deferring determination of the specific amount. For reasons discussed below, we hold that, regardless of whether a final judgment reflecting the amount of restitution has been entered, a judgment imposing a term of imprisonment is "'freighted with sufficiently substantial indicia of finality to support an appeal.'" *Id.* at 617, 130 S. Ct. at 2542 (quoting *Corey v. United States*, 375 U.S. 169, 174–75, 84 S. Ct. 298, 302–03 (1963)). Because the judgment at issue in this appeal sentenced the Appellant, Michael Muzio, to 163 months in prison, we have jurisdiction.

Accordingly, we must address the issues Muzio raises on appeal. Muzio makes the following claims: (1) the evidence presented at trial was insufficient to support a conviction; (2) the district court abused its discretion and violated Federal Rule of Evidence 404(b) by admitting evidence of Muzio's prior conviction; (3) the district court abused its discretion by imposing a substantively unreasonable 163-month prison sentence; (4) the district court erred in concluding that the offense "involved sophisticated means," which led to an erroneous two-level increase in Muzio's offense level pursuant to U.S.S.G. § 2B1.1(b)(10); (5) the district court clearly erred in concluding that Muzio was "an organizer or leader" in the offense, which led to an erroneous four-level increase in Muzio's offense level

2

pursuant to U.S.S.G. § 3B1.1(a); (6) the district court clearly erred in concluding that Muzio abused a position of trust, which led to an erroneous two-level increase in Muzio's offense level pursuant to U.S.S.G. § 3B1.3. With the benefit of oral argument and after careful review of the record and the parties' briefs, we conclude that these claims lack merit and do not warrant further discussion. Therefore, we affirm.

I.

To understand why we have jurisdiction to hear the instant appeal, it is necessary to briefly summarize the proceedings below. Muzio was convicted in the Southern District of Florida on one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; two counts of substantive wire fraud, in violation of 18 U.S.C. § 1343; six counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff(a); and two counts of making false statements to agents of the SEC and the FBI, in violation of 18 U.S.C. § 1001(a)(2). The district court entered a judgment on July 1, 2010 (July Judgment), sentencing Muzio to 163 months in prison, three years of supervised release, and $1,100 in assessments. The July Judgment indicated that restitution would be ordered but stated that "[t]he determination of restitution is deferred for [ninety] days. An *Amended Judgment*

3

*in a Criminal Case (AO 245C)* will be entered after such determination." On July 15, 2010, Muzio filed a notice of appeal from the July Judgment.[1]

The district court requested that a magistrate judge prepare a report and recommendation on the appropriate restitution award. Before the magistrate judge, the parties agreed on the amount of restitution Muzio should pay. On October 21, 2010—114 days after the sentencing hearing—the magistrate judge filed a report recommending that Muzio be ordered to pay $631,976.06. On November 3, 2010—127 days after the sentencing hearing—the District Court entered two orders (collectively referred to as the November Order) adopting the report and recommendation and ordering Muzio to pay $631,976.06 in restitution. The November Order also directed the government to prepare and submit a final judgment to the district court. To date, the government has not done so. Consequently, an amended final judgment reflecting the amount of restitution to be paid has not been entered as required by the July Judgment. The instant appeal, filed on July 15, 2010, is an appeal from the July Judgment, not the November Order.

II.

---

[1] Muzio first filed a pro se notice of appeal on July 7, 2010. On July 12, the assistant federal public defender assigned to Muzio's case filed a notice of appeal, but that notice named the incorrect defendant and thus was filed in error. The assistant federal public defender filed a corrected notice of appeal on July 15.

Thus, the question before us is whether judgments, like the July Judgment, that defer the issue of restitution can nevertheless be final for appellate jurisdictional purposes. Under the law of this circuit as it existed prior to *Dolan*, an appeal from a sentencing judgment that deferred the issue of restitution was premature—that is, the judgment was not final and appealable—until one of two possible events occurred, thus causing the appeal to ripen. The district court had to either (1) order restitution, or (2) lose the power to do so. *See United States v. Kapelushnik*, 306 F.3d 1090, 1094 (11th Cir. 2002). Prior to *Dolan*, we held that the second ripening event would occur ninety days after entry of the initial judgment based on our interpretation of 18 U.S.C. § 3664(d)(5). *See United States v. Maung*, 267 F.3d 1113, 1122 (11th Cir. 2001), *abrogated by Dolan*, 560 U.S. 605, 130 S. Ct. 2533. We reasoned that because the statute states that a district "court shall set a date for the final determination of [restitution], not to exceed 90 days after sentencing," district courts lost the power to order restitution after that deadline. *Id.* Thus, one of the two ripening events would occur, at the latest, ninety days after initial sentencing.

Applying the *Kapelushnik* framework after *Dolan* creates injustice and potentially, a constitutional violation. In *Dolan*, the Court held that "[t]he fact that a sentencing court misses the statute's 90-day deadline . . . does not deprive the court of the power to order restitution." 560 U.S. at 611, 130 S. Ct. at 2539. Thus,

5

*Dolan* deeply affected one of the two ripening events: before *Dolan*, the district court necessarily lost the power to order restitution ninety days after the defendant was initially sentenced; after *Dolan*, the district court could delay indefinitely.  The other ripening event under the *Kapelushnik* framework—the district court ordering restitution—is also not subject to a deadline.  Consequently, in light of *Dolan*, our framework creates the possibility that defendants whose initial sentences include a deferred order of restitution will be denied their right to appeal indefinitely, as both events triggering appellate jurisdiction may fail to occur.

Meanwhile, defendants sentenced under initial judgments sit in prison.  And this case proves that the prospect of an indefinite delay under the *Kapelushnik* framework is not merely a hypothetical fear.  Muzio has been imprisoned pursuant to the July Judgment for nearly four years, and an amended final judgment ordering restitution has yet to be entered.  Thus, under *Kapelushnik*, Muzio's premature appeal arguably has not ripened even though nearly four years have passed since the judgment sending Muzio to prison was entered.  The Dissent tells Muzio that this remains the law even after *Dolan* and that, as a result, Muzio must wait to appeal until *the prosecution* does what the district court told it to do in November of 2010—prepare an amended final judgment reflecting the court's order of restitution so that Muzio's appeal can finally ripen.  This would give

6

district courts—and even worse in an adversarial system, the prosecution—the power to indefinitely delay a defendant's right to appeal.

Whether Muzio has a right to appeal from the July Judgment—that is, whether we have jurisdiction to hear his appeal—ultimately turns on whether a judgment imposing a term of imprisonment but leaving restitution unresolved is "final." *See* 28 U.S.C. § 1291 (noting that appellate courts "shall have jurisdiction of appeals from all *final* decisions of the district courts" (emphasis added)).[2] The Dissent assumes that the July Judgment is not final—referring Muzio's appeal from that judgment as "premature"—because a judgment cannot be "final" for appellate jurisdictional purposes until the district court acts on its intention to order restitution.[3]

The Supreme Court explicitly refused to make this assumption, however, stating that it did "not mean to imply that we accept the . . . premise . . . that a sentencing judgment is not 'final' until it contains a definitive determination of the

---

[2] *See, e.g.*, Catharine M. Goodwin, *Federal Criminal Restitution* § 9:23 (current through Aug. 2013) (noting that "an underlying issue in both *Kapelushnik* . . . and *Dolan* is one of finality," leaving open the question of whether "a sentence of imprisonment [is] final for appeal purposes where restitution has been delayed").

[3] After assuming that the lack of a final order of restitution precludes us from exercising appellate jurisdiction over the other aspects of Muzio's sentence, the Dissent focuses on whether the November Order is final. To us, that is irrelevant, and thus we need not decide whether the November Order lacks the finality necessary to support an appeal. We would only need to determine that issue if Muzio were appealing from the court's imposition of restitution. Because he is not, the finality of the November Order is not at issue. Again, the question before us is whether the *July Judgment* is sufficiently final to support an appeal on its own, regardless of whether the November Order of restitution is final. In other words, we directly question—and ultimately reject—the Dissent's assumption that the absence of an order of restitution precludes appellate courts from hearing appeals from initial sentencing judgments.

amount of restitution." *Dolan*, 560 U.S. at 617, 130 S. Ct. at 2542. The Dissent reads as if that is exactly what the Court implied. We see no reason to do exactly what the Supreme Court explicitly said it would not do, particularly when defendants would be indefinitely deprived of their right to appeal as a result. In *Dolan*, the Court recognized the possibility of this injustice and explained in dicta why that problem would not materialize. Ultimately, however, the *Dolan* Court had to leave the "matter[] for another day." *Id.* at 618, 130 S. Ct. at 2543. That day has now arrived, and we pick up where the Supreme Court left off.

### III.

Based on Supreme Court precedent, we conclude that the July Judgment is final for purposes of appeal because it sentenced Muzio to a term of imprisonment. *See Dolan*, 560 U.S. at 617, 130 S. Ct. at 2542 (explaining that "a judgment . . . impos[ing] 'discipline' may . . . be 'freighted with sufficiently substantial indicia of finality to support an appeal'" (quoting *Corey*, 375 U.S. at 174–75, 84 S. Ct. at 302–03)). The Court in *Dolan* noted that several "strong arguments favor the appealability of the initial judgment irrespective of the delay in determining the restitution amount." *Id.* Specifically, the Court noted that allowing a defendant to appeal from an earlier or initial sentencing judgment "makes sense, for otherwise the statutory 90-day restitution deadline, even when complied with, could delay appeals for up to 90 days. Defendants, that is, would be forced to wait three

8

months before seeking review of their conviction when they could ordinarily do so within 14 days." *Id.* at 618, 130 S. Ct. at 2543. In other words, the Court would likely not tolerate even a ninety-day delay of a defendant's right to appeal, let alone the indefinite delay that would result if we refused to hear appeals until restitution has been resolved.[4]

We do not rely merely on the persuasive dicta in *Dolan*. Binding precedent from the Supreme Court's decision in *Corey* is directly on point. In *Corey*, the district court committed the defendant to the Attorney General's custody for several months for a diagnostic study but delayed pronouncing a final sentence until receiving a report from the Bureau of Prisons. 375 U.S. at 170, 84 S. Ct. at 300. Despite the fact that the district court had not imposed the final sentence it said would later follow, the Supreme Court held that a final appealable judgment existed. *Id.* at 173, 84 S. Ct. at 301. The Court explained that "the imposition of

---

[4] This calls into question whether *Kapelushnik* was correct even before *Dolan* was decided. *Kapelushnik* endorsed the exact ninety-day delay that the Supreme Court in *Dolan* implied was impermissible. The Court in *Corey* was even more explicit. Where a defendant was provisionally sentenced to prison for three to six months, the Court held that such a "commitment is clearly not lacking in sufficient finality to support an immediate appeal." 375 U.S. at 173, 84 S. Ct. at 302 (internal quotation marks omitted). Other Supreme Court precedent, discussed in detail below, further calls *Kapelushnik* into doubt. It seems that *any* delay in a defendant's right to appeal from a judgment resulting in imprisonment would run afoul of precedent holding that a sentence becomes final the moment punishment—even punishment less severe than prison—is imposed. *See, e.g.*, *Korematsu v. United States*, 319 U.S. 432, 434, 63 S. Ct. 1124, 1125 (1943) (explaining in a case where the defendant was only sentenced to probation that "certainly when discipline has been imposed, the defendant is entitled to review"). The ninety-day delay endorsed by *Kapelushnik* is thus highly suspect. After *Dolan*, that delay, which was once only ninety days long, is now indefinite. *Kapelushnik* surely cannot stand against the weight of this precedent.

such a mandatory three- or six-month term of imprisonment before the defendant could file an appeal might raise constitutional problems of significant proportions." *Id.*, 84 S. Ct. at 302.[5] The Court further reasoned that a sentence imposed "after the whole process of the criminal trial and determination of guilt has been completed, sufficiently satisfies conventional requirements of finality for purposes of appeal. The litigation is complete as to the fundamental matter at issue—the right to convict the accused of the crime charged in the indictment." *Id.* at 174, 84 S. Ct. at 302 (internal quotation marks omitted).

There, as here, the same potential bar to appellate jurisdiction existed: the district court's retention of power over some issues in the case and the need for the court to enter another judgment. That potential bar was held to be an insufficient basis for denying appellate review because the right to convict had been established and because a term of imprisonment had been imposed. Those two facts are also true here, and if anything, the facts here are more extreme. In *Corey*, the provisional term of imprisonment prior to appellate review was three to six months, while the term here is indefinite. More than forty months have already been served. Thus, here, as in *Corey*, finality has been established notwithstanding the fact that tasks remain to be completed by the district court.

---

[5] The Dissent points out that the right of a criminal defendant to appeal has never been recognized as a constitutional right. We did not author the words quoted above, however. The Supreme Court did. If the Court has suggested that significantly delaying a defendant's right to appeal "might raise constitutional problems of significant proportions," *Corey*, 375 U.S. at 173, 84 S. Ct. at 302, certainly we are free to make the same suggestion.

10

*Corey* is not alone.  The Court has said elsewhere that "certainly when discipline has been imposed, the defendant is entitled to review."  *Korematsu*, 319 U.S. at 434, 63 S. Ct. at 1125.  The Court has also plainly held that the sentence is the judgment for purposes of permitting appeal.  "Final judgment in a criminal case means sentence.  The sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212, 58 S. Ct. 164, 166 (1937); *see also Cobbledick v. United States*, 309 U.S. 323, 328, 60 S. Ct. 540, 542 (1940) (explaining that even though delays and piecemeal litigation may result, an interlocutory appeal in a criminal case is permissible when the alternative is to force a party to "abandon [his] claim or languish in jail").  Congress has also explicitly recognized that some judgments of conviction sentencing a defendant to a term of imprisonment are final notwithstanding the prospect of subsequent modification.  *See* 18 U.S.C. § 3582(b).  Here, the July Judgment disciplined Muzio by sentencing him to prison for 163 months, and accordingly, the July Judgment is final.[6]

---

[6] From our holding that a defendant who is serving a term of imprisonment is entitled to appeal from the judgment imposing that prison term, the Dissent suggests we "implie[d] that a defendant who has not begun serving his sentence of imprisonment—because he has been admitted to bail pending sentencing—may not appeal until the issue of restitution has been resolved and a final judgment entered."  Dissenting Op. at 34.  That conclusion does not logically follow from our holding.  We hold only that serving a term of imprisonment is *sufficient* to render a judgment final, not that it is *necessary* to do so.  Judgments imposing lesser forms of discipline may also "be 'freighted with sufficiently substantial indicia of finality to support an appeal.'"  *Dolan*, 560 U.S. at 617, 130 S. Ct. at 2542 (quoting *Corey*, 375 U.S. at 174–75, 84 S. Ct. at 302–03).  In *Korematsu*, the defendant was placed on probation and the imposition of his sentence was suspended entirely, yet this was sufficient to entitle the defendant to the right to review.  *Korematsu*, 319 U.S. at 434, 63 S. Ct. at 1125.  We need not hold today

This precedent also counsels directly against the Dissent's insistence that until the November Order is entered in an amended final judgment, the July Judgment remains provisional and thus unappealable. Whatever differences exist between the words "provisional" and "final" in the colloquial sense, the Court in *Dolan*—extrapolating from *Corey*—contemplated immediate appealability of judgments when "the sentencing court made clear . . . that it would order restitution, leaving open . . . only the amount." 560 U.S. at 608, 130 S. Ct. at 2537. That is all that was left open by the July Judgment.[7] By explaining that a judgment sentencing a defendant to prison is sufficiently final to support an appeal even if the district court's role in the case is not entirely complete, the Court is telling us that there is no need to engage in a semantic debate over the difference between a provisional judgment and a final one. Notwithstanding the fact that a district court has yet to enter a judgment finalizing the amount of restitution, the Court went on to say, "[We have] previously said that a judgment that imposes 'discipline' may still be 'freighted with sufficiently substantial indicia of finality to support an

what the minimum threshold might be; we hold only that, whatever that threshold is, a defendant serving a 163 month prison sentence surpasses it.

[7] The Dissent notes that the July Judgment also stated that the court would later enter an amended final judgment, and it has not done so. But of course if any issue is left open, the court will necessarily have to issue an order or enter a judgment closing the issue. Thus, the fact that the court said it would enter an amended final judgment does not make the July Judgment any less final (or more provisional) than the judgment contemplated by *Dolan*. The question is not *whether* restitution is left open, however. The question is *whether that matters* for purposes of appealing from an initial judgment. And *Dolan* said that it does not.

12

appeal.'" *Id.* at 617, 130 S. Ct. at 2542 (quoting *Corey*, 375 U.S. at 174–75, 84 S. Ct. at 302–03). Indeed, in *Corey*, the provisional sentence left far more to be done by the district court than remains to be done here. While it is unlikely here that any aspect of the initial judgment will change as a result of the court's subsequent order of restitution, in *Corey*, the district court clearly intended to—and in fact did—substantially modify the initial sentence. 375 U.S. at 172, 84 S. Ct. at 301. Notwithstanding the provisional nature of a sentence, if it deprives a defendant of his freedom, it is sufficiently final to support an appeal. *Id.* at 175, 84 S. Ct. 303.[8]

Thus, following the Supreme Court's dicta in *Dolan* and applying its holding in *Corey*, we conclude that a judgment imposing a prison sentence and restitution but leaving the specific amount of restitution unsettled is immediately appealable. This may lead to a bifurcation of some defendants' cases. We have dealt with this situation before. If a subsequent judgment is entered ordering restitution, the defendant may separately appeal that order, and the appeal may be heard separately

---

[8] Even if we are wrong, and this appeal is not final, our holding that we have jurisdiction would still be supported by Supreme Court precedent. In *Cobbledick*, the Court recognized that the rule conditioning appellate jurisdiction on finality "has been departed from only when observance of it would practically defeat the right to any review at all." 309 U.S. at 324–25, 60 S. Ct. at 541. In other words, when the rule that judgments are not appealable until final cannot be observed without undermining a defendant's right to appeal—by, for example, indefinitely delaying that right—the former rule gives way to the latter right. Despite the Dissent's attempts to distinguish *Cobbledick* factually, we rely on the case for its underlying, common-sense principle that people in prison have the right to appeal the judgments that put them there. The Dissent's view would "practically defeat the right to any review at all," *id.*, because, by the time the judgment against Muzio is final for purposes of appeal, Muzio's sentence might be over. That possibility, of course, is even more likely for defendants with shorter sentences than Muzio's who would also be subject to indefinite delays in their right to appeal if we were to adopt the Dissent's view.

or consolidated with the initial appeal if that has not yet been resolved. *See Dolan*, 560 U.S. at 617–19, 130 S. Ct. at 2542–43 (citing *United States v. Stevens*, 211 F.3d 1, 4–6 (2d Cir. 2000) and *Maung*, 267 F.3d at 1117, as examples of cases where separate appeals were filed following sentencing and a subsequent order of restitution); *see also United States v. Frederick*, 382 F. App'x 58, 59 (2d Cir. 2010) (noting that *Dolan* "indicat[ed] in dicta that judgments containing restitution components that lack specific dollar figures are final judgments that may be appealed from"), *cert. denied*, ___ U.S. ___, 132 S. Ct. 282 (2011). The Supreme Court has also recognized that if the defendant chooses to do so, he may avoid bifurcation of his appeal by waiting until restitution has been resolved to appeal. *See Corey*, 375 U.S. at 175, 84 S.Ct. at 303 (holding that defendants have the option to appeal immediately from an initial sentencing judgment or to wait and appeal from both judgments only after the second has been entered). Here, Muzio filed a timely notice of appeal from the July Judgment, so we must consider that appeal on the merits.[9]

---

[9] We are not unaware of the defects that occurred below with regard to determining the amount of restitution to be paid and the memorialization of that amount in the November Order. However, we do not have occasion to address those defects for two reasons. First, this is not an appeal from the November Order. This appeal was filed in July of 2010, months before that order issued. Second, we hold that when courts enter sentencing judgments ordering restitution but deferring determination of the amount, defendants have the option to either (a) timely appeal from the initial judgment (here, the July Judgment) and then, if desired, to timely appeal from the subsequent judgment finalizing the amount of restitution (here, the November Order may or may not qualify), or (b) timely appeal from the subsequent judgment only (here, again, the November Order may or may not qualify), in which case all issues will be heard in a single appeal. Muzio

14

IV.

We do not lightly set aside the Dissent's position, as several arguments could be raised to support that view. First, the Dissent is consistent with the desire to avoid piecemeal litigation that could result from the bifurcated appeal process we adopt here. Second, the Dissent comports with a colloquial understanding of the word "final," which one typically thinks of in binary terms (something either is or is not final; "sufficiently final" is an odd phrase). Further, if one accepts the Dissent's assumption that when the district court retains the power to order

chose option (a) by filing an appeal within fourteen days of the July Judgment. He has not filed an appeal from the subsequent order of restitution, so it does not matter whether we would be able to hear an appeal from that order had he filed one. If and when he chooses to do so, we would then have to determine whether the November Order is sufficiently final to support an appeal.

The Dissent gives reasons to suspect that it is not. The Concurrence gives one reason to suspect that the Dissent's analysis is flawed on that score. We add here that, based on the logic of this opinion, it may also matter whether the November Order is being enforced—that is, whether Muzio is actually being forced to pay restitution. *See Korematsu*, 319 U.S. at 434, 63 S. Ct. at 1125 ("[C]ertainly when discipline has been imposed, the defendant is entitled to review."). If and when such an appeal is filed, we would also have to determine whether the appeal is timely. Under option (a), the initial appeal must be timely in relation to the initial judgment, and the subsequent appeal from the order of restitution must also be timely in relation to the judgment finalizing the amount of restitution. Under option (b), the appeal as to the conviction and sentence as a whole must be timely in relation to the judgment finalizing all issues.

By giving defendants the *option* to appeal in situations like this where discipline has been imposed, we do not mean to imply that they *must* appeal when discipline is imposed to avoid having their appeals time-barred. In a situation like this, for example, where the district court stated that it intended to enter an amended final judgment, if a defendant chooses not to file an appeal until the court enters that judgment, nothing in this holding should be read to suggest that his appeal would be time-barred. Nevertheless, defendants would be well-advised to heed the Concurrence's observation that a court's judgment does not lack finality simply because the court committed an error, such as depriving the defendant of his right to be present at a particular proceeding. A defendant's appeal may well be time-barred if he waits to file his appeal on the assumption that a court's constitutional error renders its decision something less than final and, as a result, the applicable time limit lapses.

15

restitution, it necessarily retains jurisdiction over the entire case, another potential reason to side with the Dissent appears. Namely, the Dissent's approach would be consistent with the "general[] underst[anding] that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 402 (1982) (per curiam).[10] Ensuring that jurisdiction over all aspects of a sentence is lodged in only one court at a time could avoid a potentially problematic situation. On occasion, a subsequent restitution order could affect the propriety of a defendant's initial judgment and sentence. *See, e.g.*, 18 U.S.C. § 3572(b) (permitting the imposition of a fine only to the extent that the defendant will still be able to pay restitution); 18 U.S.C. § 3582(a) (directing courts to consider the § 3553(a) factors, including the need for restitution, in deciding whether to impose a term of imprisonment); *United States v. Kim*, 364 F.3d 1235, 1238 (11th Cir. 2004) (explaining that "extraordinary restitution, whether paid

---

[10] We do not necessarily accept the Dissent's assumption that the district court retains jurisdiction over a case simply because it has ongoing power to order restitution. In other words, exercising appellate jurisdiction over the July Judgment even if the district court retains the limited power to determine the amount of restitution may not violate the rule in *Griggs*. In *Dolan*, the Court recognized only that district courts retain "the power to take the action to which the [ninety-day statutory] deadline applies." 560 U.S. at 611, 130 S. Ct. at 2538–39. The Supreme Court in no way implied that this power to order restitution somehow granted the district court continuing jurisdiction over the entire case. If anything, *Dolan* implied the opposite by suggesting that § 3664(d)(5) may not be related to jurisdiction at all. *See id.* Further, in discussing the powers retained by district courts as a result of its holding, the Supreme Court in *Dolan* never used the word jurisdiction, which was probably not accidental. But our opinion does not rest on the difference, if any, between jurisdiction over a case and power to order restitution. Based on *Corey* and *Cobbledick*, our view holds even if the Dissent is correct that district courts retain jurisdiction until restitution is resolved.

16

before or after adjudication of guilt, may, in the unusual case, support a departure from the guidelines"). If the district court retains power over the initial sentence, it could revise the initial sentence to account for the restitution award. If, however, we take jurisdiction over an initial judgment before restitution is entered, the district court may lose this power to appropriately revise its initial judgment to reflect the eventual restitution award.

Though not without support, these arguments are ultimately not persuasive. We concede that our holding may bring about piecemeal litigation resulting from bifurcated appeals, but avoiding that should not be our priority here, as *Dolan* and federal statutes explicitly contemplate and endorse bifurcation. *Dolan* articulates the "strong arguments favor[ing] the appealability of the initial judgment irrespective of the delay in determining the restitution amount." 560 U.S. at 617, 130 S. Ct. at 2542. If the initial judgment is immediately appealed and restitution is later decided, 18 U.S.C. § 3664(o) clearly contemplates that the order of restitution can be separately appealed.

Further, piecemeal litigation is not likely even if we permit appeals from initial judgments before the district court has finalized restitution. Even if defendants are allowed to appeal from initial judgments, they will often choose to wait until all issues have been resolved so that the sentence can be appealed as a whole. Indeed, that is precisely what the defendants did in *Dolan* and *Corey*. And

17

in the cases where the defendant chooses to appeal immediately, a final judgment ordering restitution will usually be entered by the district court before appeal from the initial judgment is heard.  When that is the case, if either party wishes to appeal from the judgment ordering restitution, the appeals can be merged and litigation will not actually proceed in separate pieces.  *See Dolan*, 560 U.S. at 618, 130 S. Ct. at 2542–43 (noting several cases where "the Court of Appeals has consolidated the two appeals and decided them together").[11]

Moreover, the fact that a judgment leaving the issue of restitution unresolved is not "final" in every sense of the word does not permit us to ignore Supreme Court precedent indicating that a judgment sending a defendant to prison is sufficiently final to permit an appeal even if the district court's job is not done. *See, e.g.*, *Corey*, 375 U.S. at 173, 84 S. Ct. at 302.  As discussed above, the Supreme Court has instructed us that we should not be insisting on that level of finality—and indeed, we need not insist on finality at all, *see Cobbledick*, 309 U.S.

---

[11] The Dissent asks why this court would order the parties to brief and prosecute an "interlocutory" appeal.  Dissenting Op. at 43.  To be perfectly clear, we would not.  We would only expect defendants to brief and prosecute appeals from initial sentencing judgments—judgments imposing a sentence and ordering restitution but deferring determination of the amount—when the defendant *chooses* to appeal immediately.  If he instead wants to wait until restitution is resolved, our opinion makes perfectly clear that he may do so.  We do not believe, however, that he should be forced to wait in prison either for restitution to be ordered or for the district court to enter every form it says must be entered.  The Dissent points out precisely why: if there is a good chance that a defendant's conviction will be reversed, he will want to appeal his initial conviction and sentence as soon as possible so that he does not serve any more erroneously imposed prison time than necessary.  And if he believes his conviction is likely to be reversed and his sentence vacated, he is not at all concerned with the prospect of a second appeal from the delayed order of restitution because that appeal will be mooted and the issue of restitution finally resolved the moment his conviction is vacated.

18

at 328, 60 S. Ct. at 542—if the cost is indefinitely depriving imprisoned parties of their right to appeal.

Speaking of a word like "final" in terms of degrees may not be intellectually satisfying.  But in a different context, the Supreme Court has admitted that its solution to a jurisdictional problem "may not be the most intellectually satisfying approach . . . , but . . . because law is an instrument of governance rather than a hymn to intellectual beauty, some consideration must be given to practicalities.  In this case, the practicalities weigh heavily in favor of [exercising jurisdiction]." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 836–37, 109 S. Ct. 2218, 2225 (1989) (citation and internal quotation marks omitted).  Similarly, the practical advantage of ensuring that defendants are not forced to serve their entire sentences without having the right to appeal far outweighs the benefits of rigid insistence on total finality.[12]

Relatedly, the general rule that jurisdiction over a case should not be split between district and appellate courts is relaxed in cases where a defendant has been

---

[12] In *Newman-Green*, the Court continued: "If the entire suit were dismissed, Newman-Green would simply refile in the District Court . . . .  The case would then proceed to a preordained judgment."  490 U.S. at 837, 109 S. Ct. at 2225.  The same is true here, as our refusal to exercise appellate jurisdiction would result in a request that the district court enter an amended final judgment reflecting the preordained amount of restitution that has already been ordered.  Then, Muzio would simply refile this appeal—or, his prematurely filed appeal would ripen—and we would reach the merits of his appeal which have already been briefed and argued before us.  The Court reasoned that "Newman-Green should not be compelled to jump through these judicial hoops merely for the sake of hypertechnical jurisdictional purity."  *Id.*  Nor should Muzio.

imprisoned—a point which both the Supreme Court and Congress have recognized.  In certain situations where a district court can subsequently modify a sentence—which implies that the court has the same power over the case that the district court arguably retains here—a judgment "that includes . . . a sentence [to a term of imprisonment] constitutes a *final judgment*."  18 U.S.C. § 3582(b) (emphasis added); *see also Corey*, 375 U.S. at 174–75, 84 S. Ct. at 302–03).  Thus, even though simultaneous jurisdiction creates some negative consequences, those consequences are worth enduring to ensure that a meaningful right to appellate review is not eliminated or indefinitely delayed.  *See Cobbledick*, 309 U.S. at 329, 60 S. Ct. at 543 ("Due regard for efficiency in litigation must not be carried so far as to deny all opportunity for . . . appeal . . . .").

This authority also explains why we are not concerned that restitution may not be properly factored into every conceivable sentence.  It is true that, in many cases, district courts will not know the precise amount of restitution until well after the defendant's initial sentence is entered.  As a result, a district court may wish to revise the defendant's initial sentence after restitution is entered, but that may not be possible if we have assumed jurisdiction over that sentence.  Thus, a case might arise where a subsequent order of restitution renders an initial sentence improper

20

but impossible to change.[13]  This is perhaps one of the consequences that must be

endured to protect a meaningful right to review.  And in any event, to the extent

that this is potentially problematic, the Dissent's approach is subject to the same

criticism.

For example, consider a defendant who spends four years in prison, unable

to appeal, before the district court finally enters a judgment ordering restitution.

The district court may wish to revise the defendant's sentence as a result of the

order of restitution.  If a substantial restitution award is entered, the court may wish

to reduce the sentence to, for example, three years.  But of course, since the

defendant has already spent four years in prison, such a downward revision would

---

[13] We do not mean to imply that we necessarily agree that it would be impossible for a district court to incorporate a subsequent order of restitution into an initial judgment simply because an appeal from that judgment has been filed.  While it is *typically* true that the filing of an appeal divests district courts of jurisdiction over the matters contained in the appeal, *see United States v. Tovar-Rico*, 61 F.3d 1529, 1532 (11th Cir. 1995), this is not the typical situation. For reasons discussed throughout, it is appropriate to allow defendants to bifurcate a deferred determination of the amount of restitution from all other aspects of their cases.  This would mean that the district court retains the power to determine the amount of restitution even if an appeal from the initial judgment has been filed with us.  Whether the district court's retention of the power to determine the amount of restitution would also confer upon it the power to, as a result of this determination, alter the initial judgment from which an appeal has been filed is not a question before us.  It seems that in many cases, when the district court enters an amended judgment reflecting the amount of restitution, it could also enter a judgment announcing how the order of restitution should impact the initial sentence.  This amended judgment could be separately appealed to this court, and we would often be able to consolidate this appeal with the initial appeal, avoiding any potential problems.  *See Dolan*, 560 U.S. at 618, 130 S. Ct. at 2542–43 (citing several cases where appellate courts consolidated appeals from a restitution order with a pending sentencing judgment).  Even if we have already resolved the appeal, there is no reason that district courts could not amend their initial judgments to the extent necessary to properly incorporate restitution into the overall sentence.  And, if asked to do so by either party, there is no reason why we could not amend our initial judgment to reflect the district court's amendment. But, we must leave such considerations for another day.

21

be impossible. Thus, it appears that losing the ability to properly factor restitution into a defendant's sentence in every conceivable case is an unavoidable consequence of *Dolan*.[14] This example also shows why providing a meaningful right to appeal trumps this potential problem: to deny a defendant the right to appeal for four years in an effort to ensure that his sentence properly accounts for all conceivable factors offers little comfort to the defendant who learns, after his long-delayed appeal, that his conviction was improper and thus *no sentence* was merited in the first place. Though, in a rare case, it may be impossible to properly incorporate a subsequent order of restitution into a sentence, it would also be impossible to return to a wrongfully imprisoned defendant the years he spent behind bars without a right to review. The latter is a far greater evil.

Finally, our holding—which declares some judgments final for purposes of appeal even though they may be modified—has been endorsed by Congress in other contexts. Section 3582(b) states, "[n]otwithstanding the fact that a sentence

---

[14] This problem will very rarely arise. When a court enters an initial judgment ordering restitution but deferring determination of the amount, the court will have a rough impression of how much restitution is likely to be ordered. And restitution should only affect a term of imprisonment in the "unusual case" in which an "extraordinary restitution" award is ordered. *See* 18 U.S.C. § 3582(a); *Kim*, 364 F.3d at 1238. It is likely that the court would know at the time of sentencing, even if the precise amount is not set, that an extraordinary award is probable, and thus courts could in the vast majority of cases factor the anticipated award into the defendant's initial sentence. The universe of cases subject to these anomalies is narrowed even further because, as discussed above, a defendant could wait until restitution is entered before appealing thereby opting to avoid bifurcation. Finally, courts will rarely take so long to order restitution that we have resolved the defendant's appeal from the initial judgment before the district court acts. For these reasons, though it is possible that bifurcating sentencing might make this problem slightly more common, this scenario is still highly improbable.

to imprisonment can subsequently be . . . modified," "corrected," or "appealed and modified," "a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes." 18 U.S.C. § 3582(b). Similarly, § 3664(o) states that a "sentence that imposes an order of restitution is a final judgment notwithstanding the fact that . . . such a sentence can subsequently be . . . corrected," "appealed and modified," "amended," "adjusted," "or . . . the defendant may be resentenced." 18 U.S.C. § 3664(o). These sections show that the prospect of subsequent modification in the district court does not preclude an initial judgment—particularly one sending someone to prison—from being final for purposes of appeal.[15]

Ultimately, the benefits of our holding significantly outweigh concerns on the other side. Indeed, the consequences of the Dissent's position "might raise constitutional problems of significant proportions." *See Corey*, 375 U.S. at 173, 84 S. Ct. at 302 (noting the potential for problems with a three-month delay of an appeal from a sentencing judgment that subjected a defendant to a term of imprisonment). And even if these arguments were persuasive from a policy perspective, they would not permit us to ignore the precedent cited above which shows that the July Judgment, because it imposed a term of imprisonment, is final;

___

[15] Importantly, § 3664(o) also shows that adding an order of restitution to a judgment does not provide much in the sense of finality when one considers the number of ways in which a "final" judgment that includes restitution does not appear to be all that final. It would be odd to insist on the imposition of such an uncertain and decidedly not final aspect of a judgment before one is ready to declare that a judgment as a whole is final.

23

nor would they allow us to ignore the fact that a judgment need not be final if insistence on finality would preclude appellate review.

V.

Allowing a defendant to appeal as soon as he begins serving a sentence of imprisonment ensures that he will have a right to appeal while that right still means something. Through a series of errors made below, nearly four years after Muzio was sentenced and imprisoned, an amended final judgment ordering restitution has not been entered. We refuse to allow delays in the district court (or the U.S. Attorney's office) to deprive defendants like Muzio of the right to appeal for an indefinite period of time. In holding that district courts could order restitution more than ninety days after sentencing a defendant, the Court in *Dolan* was by no means suggesting, and in fact rejected in dicta, that defendants could now be deprived of their right to appeal indefinitely. The burden of the Court's desire to ensure that victims receive restitution even when district courts fall behind was not intended to be borne by defendants already serving sentences that have not been subjected to appellate review.

Accordingly, we have jurisdiction to hear Muzio's appeal from the district court's July Judgment. Because Muzio's claims on appeal lack merit, we affirm Muzio's sentence and conviction, without commenting on the aspects of his sentence related to restitution.

24

**AFFIRMED.**

COOGLER, District Judge, concurring:

I concur fully in Judge Wilson's opinion for the majority. I write separately to underscore a few points made therein and, respectfully, to add additional grounds to conclude that the July 1, 2010, judgment sentencing Mr. Muzio to 163 months in prison ("July Judgment") was final and immediately appealable.

Mr. Muzio sits today where he has been for nearly four years—in a federal prison serving an already-executed sentence. As thoroughly discussed in the majority opinion, Supreme Court precedent mandates that in criminal cases, a judgment becomes final the moment discipline—even discipline less severe than imprisonment—is imposed. *See Corey v. United States*, 375 U.S. 169, 173, 84 S.Ct. 298, 302, 11 L.Ed.2d 229 (1963) (judgment committing the defendant to the Attorney General's custody for a three-month diagnostic study before sentencing is final for purposes of appeal); *Berman v. United States*, 302 U.S. 211, 212-13, 58 S.Ct. 164, 166, 82 L.Ed 204 (1937) (judgment imposing a term of imprisonment is still final for purposes of appeal even when the execution of the sentence is suspended while the defendant is placed on probation); *Korematsu v. United States*, 319 U.S. 432, 434, 63 S.Ct. 1124, 1126, 87 L.Ed. 1497 (1943) (judgment imposing nothing more than a term of probation is final for purposes of appeal). However, this case does not require us to determine whether a sentence that has been pronounced or imposed but not yet executed is final. Mr. Muzio was told by

26

the district judge at his sentencing hearing nearly four years ago that he must appeal within fourteen days of that date, and he has now already served over forty months of his prison term.  Surely when Mr. Muzio's sentence was *actually executed*—in other words, when he was placed in federal disciplinary confinement—he had the right to an immediate appeal.

Moreover, I do not believe that the district court *could* have ordered the Bureau of Prisons to execute the July Judgment against Mr. Muzio if the July Judgment had not been final.  In civil cases, it is well-established that "[a]n execution ordinarily may issue only upon a final judgment."  *Redding & Co. v. Russwine Constr. Corp.,* 417 F.2d 721, 727 (D.C. Cir. 1969); *see also Int'l Controls Corp. v. Vesco,* 535 F.2d 742, 744 (2d Cir. 1976) (quoting *Redding & Co.*); *Gerardi v. Pelullo,* 16 F.3d 1363, 1371 n.13 (3d Cir. 1994) (citing *Redding & Co.* and 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2661 at 128-29 (1983)).  Other circuits have applied the civil rule in *Redding & Co.* to criminal cases to reach the altogether reasonable conclusion that a judgment that lacks finality cannot authorize the imprisonment of a defendant.  *See United States v. Kalinowski*, 890 F.2d 878, 882-83 (7th Cir. 1989) (Fairchild, J., concurring) ("It seems logical that in criminal cases something [that is not a final judgment] does not authorize imprisonment of a defendant, collection of his fine, or running of his term of probation.") (internal citation omitted); *United States v.*

27

*Kaufmann*, 951 F.2d 793, 795 (7th Cir. 1992) ("The sentence cannot be executed []
until there is a final judgment on all counts of the indictment.  In civil cases the
lack of a final judgment prevents execution of a judgment on one claim.  A
judgment which lacks finality cannot authorize the imprisonment of a defendant.")
(internal citations omitted).  This is perhaps why the Federal Rules of Criminal
Procedure do not provide a counterpart to Federal Rule of Civil Procedure 54(b),
which allows a district court to make final a judgment fully disposing of fewer than
all claims, because it "would be particularly unfair to subject a defendant to
imprisonment or other punishment without any right to appeal." *Kaufman*, 951
F.2d at 795.

Yet the Dissent determines that Mr. Muzio's notice of appeal from the July
Judgment was premature because the district court, due to an apparent oversight,
failed to enter an amended final judgment including the restitution amount.
However, in other criminal cases, this Court has implicitly not found appellate
jurisdiction lacking where the district court failed to include some other type of
required sentencing element—specifically forfeiture—in the sentencing judgment.
For example, in a case where the district court failed to enter a final order of
forfeiture as part of its sentencing judgment, this Court recognized, "[F]orfeiture is
a *mandatory* element of sentencing for [the violation then under consideration].  As
such, it must be ordered at a hearing that affords the defendant his right of

28

allocution." *United States v. Gilbert*, 244 F.3d 888, 924 (11th Cir. 2001) (internal

citation omitted) (superseded by rule as stated in *United States v. Marion*, 562 F.3d

1330, 1341 (11th Cir. 2009)).[1]  Nonetheless, this Court concluded that even though

the sentence was imposed "in violation of law," the government's remedy was to

appeal pursuant to 18 U.S.C. § 3742(b)(1).  Since the government failed to appeal

in a timely fashion, this Court found that it had waived the district court's error.

*Id.*

Not surprisingly, *Gilbert* did not discuss whether the sentencing judgment

that lacked a required element was sufficiently final to support the appeal before

the Court.  Implicitly, however, since this Court found that the government's

remedy was to appeal, this Court held that the judgment the government was

expected to appeal from was sufficiently final to support that appeal.  To the extent

---

[1] Because the order of forfeiture in *Gilbert* was entered in 1990, this Court applied an older version of Federal Rule of Criminal Procedure 32, which had been interpreted to mean that a forfeiture order could not be entered until sentencing.  *See* Fed. R. Crim. P. 32(b)(2) (1990) ("Criminal Forfeiture.  When a verdict contains a finding of property subject to a criminal forfeiture, the judgment of criminal forfeiture shall authorize the Attorney General to seize the interest or property subject to forfeiture. . . ."); Fed. R. Crim. P. 32 Advisory Committee Notes (1996 Amendments).  As the district court in *Gilbert* entered an order of forfeiture at an "impromptu hearing" held five months before sentencing and never incorporated the order of forfeiture into the judgment imposing the sentence, this Court held that the order of forfeiture was not part of the defendant's sentence and it did not forfeit the defendant's property to the government.  *Gilbert*, 244 F.3d at 925-26.  However, Federal Rule of Criminal Procedure 32 was amended in 1996 to replace former subdivision (b) with subdivision (d), and Federal Rule of Criminal Procedure 32.2 was adopted in 2000 to govern criminal forfeiture.  These amendments allow the district courts to issue a "preliminary order of forfeiture" before sentencing.  *See* Fed. R. Crim. P. 32(d)(2) (1996); Fed. R. Crim. P. 32.2(b)(1), (2) (2000).  Still, the district court must include the order of forfeiture, directly or by reference, in the judgment.  *See* Fed. R. Crim. P. 32.2(b)(4)(B).

that ordering forfeiture and ordering restitution are both mandatory requirements for the district court with regard to sentencing in certain cases, *see* Federal Rule of Criminal Procedure 32.2(b)(4)(B) (requiring that the order of forfeiture be actually "included" in the sentencing judgment); 18 U.S.C. § 3663A(a)(1) ("[W]hen sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense . . . ."), not allowing Mr. Muzio to appeal the July Judgment is inconsistent with *Gilbert*.[2]

To be clear, I am not suggesting that we are bound by this Court's silence on jurisdiction in previous cases to conclude that we have jurisdiction here. However, this Court is always required to consider its jurisdiction *sua sponte*. *See United States v. Lopez*, 562 F.3d 1309, 1311 (11th Cir. 2009); *but see Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S.Ct. 1436, 1448, 179 L.Ed.2d 523 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed.") (citing *Hagans v. Lavine,* 415 U.S. 528, 535, n.5, 94 S.Ct. 1372, 1377 n.5, 39 L.Ed.2d 577 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions

---

[2] The Dissent finds *Gilbert* distinguishable because the district court in that case thought it had completed the sentencing process, while the district court here was aware that it had not finished sentencing Muzio when it entered the July Judgment. However, the district court's understanding seems irrelevant to the question of finality. *Gilbert* is instructive because it suggests that it would be proper to appeal a judgment even though that judgment lacked a required sentencing element. Similarly here, the appeal from the July Judgment was appropriate despite the fact that the element of restitution was missing.

*sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us.")).  Nonetheless, *Gilbert* did not involve a simple review of judgment, but instead, a finding that the judgment was such that the government's failure to appeal from it resulted in a waiver.

Further, if we were to find a lack of jurisdiction, Mr. Muzio may be unable to appeal his conviction and sentence before he has served the sentence in its entirety, or at least much more of it.  After all, there is no guarantee that the U.S. Attorney's office will ever submit, or the district court will ever enter, an amended final judgment on restitution in this case.[3]  Finding no jurisdiction under these circumstances would create an unintended incentive where either the government or the district court could essentially evade appellate review by failing to include a restitution award in a judgment.

While I recognize the federal courts' "long-established rule against piecemeal appeals in federal cases and the overriding policy considerations upon which that rule is founded," *Andrews v. United States*, 373 U.S. 334, 340, 83 S.Ct. 1236, 1240, 10 L.Ed.2d 383 (1963), the rule against piecemeal appeals is a

---

[3] The Dissent suggests that a defendant prejudiced by a district court's delay in discharging its full sentencing obligation could seek a writ of mandamus ordering the district court to complete the sentencing.  While seeking a writ of mandamus from this Court in 2010 would clearly have been the preferred approach, nearly four years have elapsed since then.  A refusal to review the July 2010 judgment at this juncture, until Muzio's counsel obtains a writ of mandamus, would violate the principles recognized by the Supreme Court in *Cobbledick v. United States* and discussed by the Majority.  *See* 309 U.S. 323, 324-25, 60 S.Ct. 540, 541 (1940) (explaining that the rule conditioning appellate jurisdiction on finality should not be enforced when observance of it "would practically defeat the right to any review at all").

prudential policy employed to promote efficient judicial administration, not a constitutional prohibition. *See Cobbledick v. United States*, 309 U.S. 323, 325-26, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940) ("[C]ongress . . . by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. . . . [The rule of finality] is a means for achieving a healthy legal system."). This is an unusual case, and the facts of this case drive the Court to an unusual conclusion. When faced with the tension, as we are here, between the federal courts' policy against piecemeal appeals and the right of a defendant to a speedy appeal once a judgment imposing discipline has been executed against him, the defendant's rights must prevail. *See Corey*, 375 U.S. at 173, 84 S.Ct. at 302 ("[T]he imposition of such a mandatory three- or six-month term of imprisonment before the defendant could file an appeal might raise constitutional problems of significant proportions."). Today we affirm Mr. Muzio's conviction and sentence. But if his conviction and sentence were due to be reversed, and yet we were to dismiss his appeal for lack of a final amended judgment on restitution, Mr. Muzio could never get back the forty months that he has already served in prison or the days he would spend in prison waiting on the district court to issue an acceptable ruling on restitution.

Finally, the Dissent equates Mr. Muzio not being present when the issue of restitution was decided to not being present at his sentencing. There is no question

that the absence of a defendant from his sentencing would be a grave concern. But since the district court has not yet entered a final judgment on restitution, any constitutional infirmities that may have been inherent in the district court's handling of the restitution matter thus far can certainly either be remedied by the district court in its actions following this proceeding or addressed in an appropriate appeal following the entry of a final judgment on the issue of restitution.[4] Importantly, Mr. Muzio *was* present when the judgment sentencing him to 163 months in prison was imposed, and for all the reasons stated in the majority opinion and herein, he deserved the right to appeal immediately from that judgment.

---

[4] The Dissent wrongly asserts that the Majority opinion never explains whether it is reviewing the November restitution order, and if not, whether it is because Muzio did not file a notice of appeal following the entry of that order. As explained in footnote three of the Majority opinion, we are not reviewing the November restitution order because Muzio did not make his restitution proceeding the subject of this appeal. As such, we need not consider the question that the Dissent focuses on, which is whether the November restitution order lacks the finality necessary to support an appeal. But even if that question was at issue, the Dissent's analysis in answering it is flawed. The Dissent concludes that the November restitution order cannot be considered the equivalent of a final judgment because the restitution proceeding that precipitated that order violated Muzio's constitutional rights. In so stating, the Dissent appears to suggest that when a judgment is illegal in some way, it cannot be a final judgment. However, determining whether a judgment is final for purposes of appeal is certainly a separate inquiry from determining whether that judgment violates the law.

33

TJOFLAT, Circuit Judge, dissenting:

On July 1, 2010, the District Court sentenced the defendant to a prison term of 163 months, deferred the imposition of mandatory restitution pursuant to 18 U.S.C. § 3664(d)(5) until the identity of the victims and the amount of restitution could be calculated, and entered a "Final Judgment" containing a statement that, upon entering a restitution order, it would enter an "Amended Final Judgment." Fourteen days after the District Court entered the "Final Judgment," the defendant's court-appointed counsel filed a notice of appeal. Four months later, on November 3, 2010, the District Court determined the amount of restitution due and instructed the Government to submit an "Amended Final Judgment" for its approval. The Government failed to do that, and an "Amended Final Judgment" has yet to be entered.

Today, in the absence of a true final judgment, the court has chosen to review the "Final Judgment" the District Court entered on July 1, 2010. In doing so, the court is ignoring the policies underpinning the "final judgment rule," entertaining an interlocutory appeal contrary to law, and setting the stage for untold institutional mischief. What's worse, the court is denying the defendant rights protected by the Constitution and Federal Rules of Criminal Procedure 32 and 43.

While the step the court is taking in this case may be well-intentioned, and is urged on by the United States government, it is indefensible. I will explain why it

is indefensible after recounting what took place in the District Court and how the U.S. Attorney planted the seeds for today's decision.

I.

A.

Michael Muzio was indicted in the Southern District of Florida on April 14, 2009, and on April 16 a Magistrate Judge ordered that he be detained pending trial before a jury. His trial began February 10, 2010. Seven days later, the jury found Muzio guilty of one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; two counts of substantive wire fraud, in violation of 18 U.S.C. § 1343; six counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff(a); and two counts of making false statements to agents of the Securities and Exchange Commission and the Federal Bureau of Investigation, in violation of 18 U.S.C. § 1001(a)(2).

On June 30, 2010, Muzio came before the District Court for sentencing. After overruling Muzio's objections to the presentence report and entertaining the parties' sentencing recommendations, the District Court pronounced sentence. It remanded Muzio to the custody of the Attorney General for 163 months,[1] to be followed by three-years' supervised release.[2] The court then asked the parties

---

[1] The court imposed concurrent sentences on all counts—163 months on the conspiracy, wire-fraud, and securities-fraud counts, and 60 months on the false-statement counts.

[2] The court also ordered Muzio to pay $1,100 in special assessments.

whether they had any objections to the sentences or manner in which they were

pronounced.[3]  They had none.  After the court informed Muzio of his right to

appeal his convictions and sentences within fourteen days,[4] the Government's

attorney, Assistant U.S. Attorney Karen Rochlin, inquired whether the court

intended to include restitution as part of Muzio's overall sentence.  Almost as an

afterthought, she asked:

> MS. ROCHLIN: Is the Court willing to consider restitution today or
> would Your Honor like to set that within 90 days.
>
> THE COURT: The probation officer has advised me, and I reviewed
> all this, that he's unable to pay a fine, no fine is imposed.  This matter
> of restitution is something that is – may or may not be required under
> the all these guideline regulations.  Is there something where the Court
> has to make some sort of – have some evidentiary hearing and make
> some finding?  Is that recommended under all this?
>
> MS. ROCHLIN: Your Honor, my understanding is that restitution is
> mandatory pursuant to statute[5] and the Court can either impose a

---

[3] United States v. Jones, 899 F.2d 1097, 1102 (11th Cir. 1990), overruled in part on other grounds by United States v. Morrill, 984 F.2d 1136, 1137 (11th Cir. 1993), requires a district court "to elicit fully articulated objections, following imposition of sentence, to the court's ultimate findings of fact and conclusions of law."

[4] See generally Fed. R. App. P. 4(b)(1) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal.").

[5] 18 U.S.C. § 3663A, "Mandatory restitution to victims of certain crimes," states, in pertinent part:

(a)(1) Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

. . . .

(c)(1) This section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense–

36

restitution order now or can reset this matter within 90 days from sentencing.

THE COURT: Well, do I have anything here?  I have found that the testimony reflected 600 and whatever thousand dollars was the amount that was the subject of this fraud.  Is that the amount you're talking about?  Or is there evidence that is – at the end of the day, that is the total amount that was discussed. Is that what you're referring to?

MS. ROCHLIN: Yes, Your Honor.  We would ask the Court to order restitution in the amount of $631,976.80.

THE COURT: And to whom does the government suggest that should be paid?

MS. ROCHLIN: To the victims of the crime as identified by US Probation.

THE COURT: Do we have a list of those people at this point in time?

THE PROBATION OFFICER: No, Your Honor.  Probation has not determined the exact victim list, and would appreciate the 90 days hearing to certify and verify with the victims that they have been

---

(A) that is–

. . . .

(ii) an offense against property under this title, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit;

. . . .

(3) This section shall not apply in the case of an offense described in paragraph (1)(A)(ii) if the court finds, from facts on the record, that–

(A) the number of identifiable victims is so large as to make restitution impracticable; or

(B) determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

(d) An order of restitution under this section shall be issued and enforced in accordance with [18 U.S.C. §] 3664 ["Procedure for issuance and enforcement of order of restitution"].

(emphasis added).

contacted, what their reported loss amounts are and speak with the agent to determine the most appropriate amount for each victim.

THE COURT: All right.  The Court will reserve ruling on the application of the government to have a hearing, <u>a restitution hearing</u> as the government suggests <u>is mandated by law</u>.  We will set that hearing – we will schedule that hearing after, after the government has furnished to the probation office an itemized list and details showing whatever the government's position is with respect to the amount that is due and owing.  It would appear to be in the $630,000 range or whatever, but that will depend upon the government's motion and the replay of the defense, all furnished to the probation office.

We will require that to be done, to be filed within 90 days from today.  After that the probation office will conduct their review and analysis and when that is supplied to the Court, the Court will then probably schedule a hearing before US Magistrate to have another substantial evidentiary hearing.

. . . .

All right then.  The government will prepare an order that reflects this 90 day requirement, the briefing schedule and I guess <u>the defendant will have to be brought back from wherever he is</u> or wherever he is assigned, I'm recommending Coleman, and at this point, the defendant is remanded to custody of the United States Marshal.

Doc. 191, at 15–17.[6] (emphasis added).

---

[6] I assume that the District Court intended to follow the "Procedures for issuance and enforcement of restitution" set out in 18 U.S.C. § 3664.  Section 3664 states, in pertinent part:

(a) For orders of restitution under this title, the court shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order.  The report shall include, to the extent practicable, a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant.  If the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court.

The District Court signed a form, "Judgment in a Criminal Case," on July 1,

2010 (the "July Judgment"), which included Muzio's sentence of imprisonment

and terms of supervised release.  The document recited that "[t]he determination of

---

(b) The court shall disclose to both the defendant and the attorney for the
Government all portions of the presentence or other report pertaining to the
matters described in subsection (a) of this section.
(c) The provisions of this chapter, chapter 227 ["Sentences"], and Rule 32(c) of
the Federal Rules of Criminal Procedure ["Sentencing and Judgment"] shall be
the only rules applicable to proceedings under this section.
(d)
. . . .
(5) If the victim's losses are not ascertainable by the date that is 10 days prior to
sentencing, the attorney for the Government or the probation officer shall so
inform the court, and the court shall set a date for the final determination of the
victim's losses, not to exceed 90 days after sentencing. . . .
(6) The court may refer any issue arising in connection with a proposed order of
restitution to a magistrate judge or special master for proposed findings of fact
and recommendations as to disposition, subject to a de novo determination of the
issue by the court.
. . . .
(f)
. . . .
(2) Upon determination of the amount of restitution owed to each victim, the court
shall, pursuant to section 3572, specify in the restitution order the manner in
which, and the schedule according to which, the restitution is to be paid, in
consideration of–
(A) the financial resources and other assets of the defendant, including whether
any of these assets are jointly controlled;
(B) projected earnings and other income of the defendant; and
(C) any financial obligations of the defendant; including obligations to
dependents.
(3)(A) A restitution order may direct the defendant to make a single, lump-sum
payment, partial payments at specified intervals, in-kind payments, or a
combination of payments at specified intervals and in-kind payments.
(B) A restitution order may direct the defendant to make nominal periodic
payments if the court finds from facts on the record that the economic
circumstances of the defendant do not allow the payment of any amount of a
restitution order, and do not allow for the payment of the full amount of a
restitution order in the foreseeable future under any reasonable schedule of
payments.

restitution is deferred for (90) days.  An <u>Amended Judgment in a Criminal Case (AO 245C)</u> will be entered after such determination."  Doc. 162, at 5.

B.

On July 6, Assistant Federal Public Defender Miguel Caridad, who had represented Muzio throughout the trial and sentencing proceedings, filed a motion to withdraw as Muzio's attorney.  The next day, Muzio moved the District Court for the appointment of counsel.  On July 12, the court referred the motions to the Magistrate Judge, and on July 15, while the motions were pending, Caridad filed a notice of appeal.  On August 5, the Magistrate Judge granted Caridad's motion to withdraw[7] and Muzio's motion for the appointment of counsel, designating Richard Rosenbaum as substitute counsel.[8]

On August 12, 2010, the District Court referred the restitution matter to the same Magistrate Judge, instructing him "to hold a restitution hearing and submit a Report & Recommendation."  Doc. 189, at 1.[9]  The Probation Officer thereafter

---

[7] The Magistrate Judge's order stated,

> The Court finding that the relationship between the Federal Public Defender's Office and this defendant has broken down resulting in a lack of trust and confidence by defendant in his current representation.  While the Court finds no insufficiency in the representation of defendant by his current court-appointed counsel, the Court nevertheless finds it in the interests of justice to appoint substitute counsel for this defendant for all further purposes.

Doc. 187, at 2.

[8] The Magistrate entered the order following an August 4 hearing on the motions.  Muzio was present at the hearing.  Doc. 186.  He was brought to the hearing pursuant to a writ of habeas corpus ad testificandum issued by the Magistrate Judge.  Doc. 177.

[9] 18 U.S.C. § 3664(d)(6) authorizes a district court to refer restitution issues to a magistrate judge.

40

furnished the Magistrate Judge with a memorandum listing the amount of restitution owed each victim, for a total restitution of $627.997.05.

On September 14, 2010, the Magistrate Judge summoned the parties' attorneys, Rochlin and Rosenbaum, and the Probation Officer, Nichole Laurie, to attend a "Status Conference" on September 29.  Doc. 200.  The conference was held as scheduled.  The record does not contain a transcript of what was said at the conference; what the record does contain is the Clerk's Minute Entry.[10]  The Clerk recorded that Muzio's "PRESENCE NOT REQUIRED" and checked a box indicating "Defendant . . . Not Present."  Doc. 201, at 1.  Following the heading "Result of hearing," the Clerk wrote: "Court will supplement the report and recommendation, with the new figure for Restitution of $627,997.05."  Doc. 201, at 1.

On October 21—114 days after Muzio stood before the District Court for sentencing—the Magistrate Judge filed a Report and Recommendation recommending that Muzio be ordered to pay $631,976.06.  Doc. 208, at 1.[11]  The report stated that "the undersigned conducted a hearing on this matter on September 29, 2010.  At that time, the Court was advised that the United States and defendant are in agreement as to the restitution amount calculated by the

---

[10] The Minute Entry indicates that a court reporter was present at the conference.

[11] According to the Magistrate Judge's Report and Recommendation, the Probation Office located an additional victim after submitting the initial memorandum to the Magistrate Judge; thus the higher number.

Probation Office to be assessed in this case." Doc. 208, at 1. The Magistrate Judge also noted that Muzio "requests no further hearing on this matter." Doc. 208, at 4.

Rosenbaum, for Muzio, filed an objection to the Magistrate Judge's Report and Recommendation on November 1, 2010. In the objection, Rosenbaum submitted that Muzio "object[ed] to the Report and Recommendation," that he "should not be responsible for restitution on these facts and circumstances," and that he objected on "[o]ther grounds to be argued ore tenus." Doc. 209, at 1.[12] He further requested that the District Court refuse to adopt the Report and Recommendation and "deny the Government's request for restitution." Doc. 209, at 1. Rochlin responded for the Government on November 3, arguing that, by statute, restitution was mandatory and that Muzio failed to support his objection with any factual or legal support. Doc. 212, at 2.

That same day, November 3, 2010, the District Court considered the Magistrate Judge's Report and Recommendation, Rosenbaum's objections, and Rochlin's response. Doc. 210, at 1. Rochlin had included with her response a proposed order, which the District Court signed, dated, and entered into the record. The court did so without the presence of Muzio or his attorney. The order stated:

---

[12] Nothing in the record explains why the Magistrate Judge would state in his Report and Recommendation that Muzio "requests no further hearing on this matter," only to have Rosenbaum 10 days later ask the District Court for a hearing in which he could present oral argument in support of his objections to the Report and Recommendation.

"After conducting a de novo review of the record, the Court determine[d] that the Report contains well-reasoned recommendations" and therefore "affirmed and adopted" the Report and Recommendation "as an order of this Court." Doc. 210, at 1.[13] The order required Muzio to pay restitution in the sum of $631,796.06 to the victims identified in the list attached to the Report and Recommendation and specified the terms of payment and set out a repayment schedule.[14] Doc. 210, at 1.

Also on November 3, the District Court entered a second order on the Magistrate Judge's Report and Recommendation. Doc. 211.[15] The order stated that the District Court, "having independently reviewed the record, . . . conclude[d] that [the Magistrate Judge's] Report and Recommendation is a thorough and accurate reflection of both the record and the law at issue." Doc. 211, at 1.[16] The second order therefore required Muzio to pay $631,976.06 in restitution, but did

---

[13] 18 U.S.C. § 3664(d)(6) required the District Court to make a de novo determination of the Magistrate Judge's determination. Since a transcript of the September 29, 2010, status conference before the Magistrate Judge—where the amount of restitution due the respective victims was determined—was not made, I do not know what record the District Court was referring to when it stated that it "conduct[ed] a de novo review of the record."

[14] The order required Muzio, while incarcerated, to pay "10% of the wages earned" working in a "Federal Prison Industries (UNICOR) job" and "$25 per quarter" if he does not work in a UNICOR job, and while on release from incarceration, "10% of monthly gross earnings, until such time as the Court may alter that schedule in the interests of justice." Doc. 210, at 2.

[15] The record does not explain why the court to entered a second order on the Report and Recommendation.

[16] As indicated in note 13, supra, I am unable to find what the court was referring to when it stated that it had "independently reviewed the record."

43

not specify the terms of payment or identify the recipients of the restitution.[17]  The

order also required Rochlin, for the Government, to "PREPARE and SUBMIT a

Final Judgment to this Court."[18]  Doc. 211, at 2.  Rochlin never did that;

consequently, the District Court never entered an "Amended Judgment" as the July

Judgment—the judgment imposing a terms of imprisonment—stated that it

would.[19]

On November 22, 2010, Muzio, acting pro se, filed with the District Court

an "Objection of Restitution Hearing," stating that he objected to the September 29

---

[17] 18 U.S.C. § 3664(f)(2) requires a judge to "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid."

[18] As indicated above, the District Court issued two orders on November 3, 2010.  My reference to the court's November 3, 2010, order in the following discussion is to the second order entered on November 3, 2010, not the first.

[19] Because there is no transcript of the September 29, 2010, Status Conference before the Magistrate Judge, Muzio's appointed appellate counsel, Phillip Horowitz, was denied the opportunity to review the "record" on which the District Court based its de novo review.  As the Supreme Court has explained, "when, as here, new counsel represents the indigent on appeal, how can he faithfully discharge the obligation which the court has placed on him unless he can read the entire transcript?  His duty may possibly not be discharged if he is allowed less than that."  Hardy v. United States, 375 U.S. 277, 279–80, 84 S. Ct. 424, 426–27, 11 L. Ed. 2d 331 (1964).  To that end, the Court Reporter Act requires that a reporter "shall . . . record[] verbatim by shorthand, mechanical means, electronic sound recording, or any other method . . . (1) all proceedings in criminal cases had in open court."  28 U.S.C. § 753(b).  "[I]f the defendant is represented on appeal by an attorney who did not participate in the trial, a new trial is necessary if there is a substantial and significant omission from the trial transcript."  United States v. Preciado-Cordobas, 981 F.2d 1206, 1212 (11th Cir. 1993).

In this case, Horowitz had no way to reconstruct precisely what was said during the Status Conference and what the District Court examined in conducting the de novo review of the record. This "substantial and significant omission" from the record, United States v. Charles, 313 F.3d 1278, 1283 (11th Cir. 2002), made it exponentially more difficult for counsel to effectively allege error in the restitution hearing procedure.  "[T]he fact that his new appellate counsel is foreclosed from examining for possible error a substantial and crucial portion of the trial renders illusory his right to appeal."  United States v. Selva, 559 F.2d 1303, 1305 (5th Cir. 1977).

restitution hearing being held in his absence and that he "was prepared to introduce new evidence." Doc. 216, at 1. He added that

> [a]t no time did [he] agree with any amount or method of calculation of amount [of] loss and [that he] objects to [the Magistrate Judge's Report and Recommendation] where it states defendant agreed to amount [of] loss and victims.
>
> Therefore Defendant request[s] this honorable court [to] schedule a restitution hearing where defendant can present evidence to refute Government testimony.

Doc. 216, at 1. On November 29, Rochlin filed a response for the Government, with this statement:

> Insofar as the defendant claims he was not present for determinations relating to restitution, his allegations are meritless. The defendant was present during a hearing on June 8, 2010 when Magistrate Judge Ted E. Bandstra determined the actual amount of loss to victims which was then used to establish the amount of restitution.[20] The defendant complains of not being present on September 29, 2010; however, proceedings on that date involved a status conference, which at most, addressed legal questions. Accordingly, the defendant's presence was not required on that date. Fed. R. Crim. P. 43(b)(3).

---

[20] The June 8 hearing was held for the purpose of reviewing prior to the scheduled June 30 sentencing proceeding the loss calculation reflected in the Probation Office's presentence report. At the June 30 proceeding, the probation officer who prepared the report, Nichole Laurie, stated that "[p]robation has not determined the exact victim list, and would appreciate the 90 days hearing to certify and verify with the victims that the have been contacted, what their reported loss amounts are and speak with the agent to determine the most appropriate amount for each victim." Doc. 191, at 16. It is apparent that Magistrate Judge Bandstra's resolution of the restitution issues failed to satisfy the District Court on June 30, which explains why the District Court continued the sentencing hearing. Cf. United States v. Patterson, 595 F.3d 1324, 1327 (11th Cir. 2010) ("While the Mandatory Victims Restitution Act requires a judge to order restitution to compensate the full amount of each victim's losses, it does not require restitution to match the loss figure used for sentencing. Indeed, the amounts of loss and restitution can and do differ." (citations omitted)).

45

Doc. 217, at 3–4 (record citations omitted).  It appears from the record that the court did not rule on Muzio's objection.  The objection and Rochlin's response simply laid dormant.

On April 28, 2011, Rosenbaum, at Muzio's direction, filed a motion to withdraw as counsel.  The District Court referred the motion to a Magistrate Judge, who held a hearing on June 13.[21]  Thereafter, on June 15, the Magistrate Judge granted the motion to withdraw and appointed Phillip Horowitz to serve as Muzio's appellate counsel.

Before briefing in this appeal commenced, we questioned whether this court had jurisdiction to entertain the appeal and instructed the parties to respond to the following question:

> Whether, in light of this Court's reasoning in Kapelushnik, the premature notice of appeal filed by Muzio [following the July Judgment] ripened into an effective notice of appeal, and, the July 1, 2010, judgment containing an undetermined amount of restitution became the final judgment.  United States v. Kapelushnik, 306 F.3d 1090, 1093–94 (11th Cir. 2002); Dolan v. United States, [650] U.S. [695], 130 S. Ct. 1533, 177 L. Ed. 2d 108 (2010).

Muzio's response was mixed.  On the one hand, he contended that a final judgment had not been entered and the case should be remanded to the District Court.  On the other hand, he argued that the July 15, 2010, notice of appeal ripened into an effective notice of appeal.  The Government's position was that the District Court's

---

[21] Muzio was present at the hearing.  Doc. 255.  He was brought to the hearing pursuant to a writ of habeas corpus ad testificandum issued by the Magistrate Judge.  Doc. 242.

November 3, 2010, order served as an amended final judgment[22] and that the defendant's premature notice of appeal had ripened into an effective notice of appeal following the entry of that order.  We carried the jurisdictional issue with the case.[23]  After the appeal was fully briefed, we heard oral argument on July 19, 2013.

## II.

The "[p]rocedure for the issuance and enforcement of order of restitution," prescribed in 18 U.S.C. § 3664, required the District Court to "set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5).[24]  In this case, the District Court entered its order fixing the amount of restitution 125 days after it sentenced Muzio to prison.  As such, the District Court did not comply with the terms of § 3664(d)(5).

In this circuit, the rule used to be that an order of restitution entered more than 90 days after sentencing was invalid, and therefore by operation of law the judgment became final—without an enforceable restitution order—on the 90th

---

[22] The Government took this position even though the November 3, 2010, order is an interlocutory order.  That is, until the District Court entered an amended final judgment, the entire case remained before it, and it could, at least in theory, revisit the prison sentences imposed on July 1, 2010.

[23] In our order carrying the jurisdictional issue, we instructed the parties that they could, but were not required to, further address the jurisdictional issue in their merits briefs.

[24] 18 U.S.C. § 3664(d)(5) provides, in pertinent part:
> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.

day.  United States v. Maung, 267 F.3d 1113, 1122 (11th Cir. 2001).  Based on

Maung, we held that a premature notice of appeal ripened into an effective notice

of appeal 90 days after sentencing if the District Court failed to enter an order of

restitution.  United States v. Kapelushnik, 306 F.3d 1090, 1094 (11th Cir. 2002).

As the majority explains, our holding in Maung has been abrogated by the

Supreme Court's decision in Dolan v. United States, 560 U.S. 605, 130 S. Ct.

2533, 177 L. Ed. 2d 108 (2010), which held that "a sentencing court that misses the

90-day deadline nonetheless retains the power to order restitution." Id. at 608, 130

S. Ct. at 2537.  In Dolan, as in this case, the District Court entered a judgment after

the defendant pled guilty, but left to a later date the amount of restitution to be

determined.  Id.  Because the judgment left restitution open, it was by its nature

provisional.  After 90 days had passed, the District Court entered a memorandum

opinion and restitution order, which required that Dolan pay restitution.  Id. at 609,

130 S. Ct. at 2537.  The Supreme Court held that, although the District Court had

entered the amount of restitution after 90 days of sentencing, § 3664(d)(5) "d[id]

not deprive the court of the power to order restitution." Id. at 611, 130 S. Ct. at

2539.[25]

---

[25] Although the Court held that 18 U.S.C. § 3664(d)'s 90-day deadline is not "jurisdictional," it did so in the sense that a district court's failure to abide by the deadline does not automatically deprive the court of the power to order restitution.  See Dolan, 560 U.S. at 611, 130 S. Ct. at 2538–39.  If the District Court retained the power to order restitution, it necessarily retained jurisdiction over the case.

48

Therefore, having retained jurisdiction to enter a restitution order, the District Court's failure to enter an order of restitution within 90 days of Muzio's sentencing is not fatal.  But the Supreme Court's discussion in Dolan does not illuminate the concerns implicated by this appeal.[26]  It is true that the Court stated in dicta that it did "not mean to imply that [it] accept[ed] the . . . premise . . . that a sentencing judgment is not 'final' until it contains a definitive determination of the amount of restitution."  Id. at 617, 130 S. Ct. at 2542.  However, the Court left resolution of that "matter[] for another day."  Id., 130 S. Ct. at 2543.

The majority holds that a sentencing judgment is final if it imposes "a term of imprisonment but leav[es] restitution unresolved.'"  Majority op. at 7.  The July Judgment sentenced Muzio to prison; therefore, it is final.  I disagree with the majority's premise—that an unfinished sentencing process can be reviewed on appeal.  In this case, the July Judgment on its face indicates unambiguously that Muzio's sentencing had not been concluded and thus cannot be final; it is

[26] From its docket sheet in Dolan, I note that the District Court did not enter an amended final judgment after it issued its memorandum opinion and restitution order.  Instead, Dolan filed a notice of appeal from the opinion and order.  He did not seek to appeal the initial, provisional judgment.  Although neither the Tenth Circuit nor Supreme Court discussed whether they had jurisdiction to entertain Dolan's case, it is clear that both courts treated the memorandum opinion, restitution order, and the terms of the provisional judgment as a final judgment since Dolan's case had remained in the District Court's bosom in the interim, and the memorandum opinion and order indicated that the court considered that the entry of the order closed the case.

In contrast, Muzio filed his notice of appeal prematurely, after the District Court entered the July Judgment and before it acted on its intention to order restitution.  And, unlike the situation in Dolan, here the District Court's November 3 restitution order expressly indicated that the court would enter an amended final judgment.  Thus, while in Dolan the District Court's task was complete, here it was not because the District Court never entered an amended final judgment, as it stated it would.

provisional.  The majority acknowledges that the July Judgment indicates as much, but nonetheless concludes that it is a final judgment.

The majority opinion does not respond to the question we should be asking and which we directed the parties to brief: whether the District Court's November 3, 2010, order ripened Muzio's premature notice of appeal (filed on July 15, 2010) into an operative notice of appeal, so to enable this court to review the July Judgment <u>and</u> the November 3, 2010, order.  As I explain in the next part, the November 3 order did not render the premature notice of appeal operative; hence, we are powerless to entertain this appeal.

### III.

We have jurisdiction over "final decisions of the district courts."  28 U.S.C. § 1291.  "In criminal cases, as well as civil, the judgment is final for the purpose of appeal 'when it terminates the litigation between the parties on the merits' and 'leaves nothing to be done but to enforce by execution what has been determined.'"  <u>Berman v. United States</u>, 302 U.S. 211, 212–13, 58 S. Ct. 164, 166, 82 L. Ed. 204 (1937) (quoting <u>St. Louis, I. M. & S. Ry. Co. v. S. Express Co.</u>, 108 U.S. 24, 28–29, 2 S. Ct. 6, 8, 27 L. Ed. 638 (1883)); <u>see also</u> Fed. R. Crim. P. 32(k)(1) ("In the judgment of conviction, the court must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence.").  "Final

50

judgment in a criminal case means sentence. The sentence is the judgment."

Berman, 302 U.S. at 212, 58 S. Ct. at 166.

By its very terms, the July Judgment did not terminate the litigation; rather, it left something to be done—the entry of a final judgment containing a restitution order. It was clear that restitution would be part of Muzio's sentences; 18 U.S.C. § 3663A mandated it, and the District Court stated that it would comply with that statute. Therefore, when the District Court recessed the June 30, 2010, sentencing proceeding, the prison sentences the court had imposed were provisional. So long as a district court retains jurisdiction to enter an order of restitution as part of the defendant's sentencing package, the case remains in the court's bosom, and the court remains at liberty to reexamine, and to alter if appropriate, the other provisions of the sentencing package. See infra part V.

Nor was the sentencing process completed on November 3, 2010, when the District Court entered the order adopting the Magistrate Judge's Report and Recommendation. Although the order fixed the amount of restitution, the amount was provisional; the court had still not finished its task. According to the District Court, the task would not be finished until Rochlin prepared and submitted to the court for its consideration an "Amended Final Judgment."[27] She failed to do that.

---

[27] And as I point out below, the task would not be finished until the District Court convened and held a hearing that complied with Fed. R. Crim. P. 32(i)(4) and adjudicated the amount of restitution to Muzio was to pay.

51

Consequently, there is no final judgment for us to review. All we have is the court's November 3, 2010, order. That order cannot be considered the equivalent of a final judgment.

I say this because the District Court failed to comply with fundamental requirements of a sentencing proceeding. We presume that judges follow the law. Together with the November 3 order's express language that an amended final judgment would be entered, the absence of these sentencing requirements strongly indicates that the Government or District Court should have recognized that the sentencing process was not over.[28]

First and foremost is the fact that Muzio was not present when the court entered the order purportedly fixing the amount of restitution to be paid. Restitution is part of a defendant's sentence,[29] and Muzio had a constitutional right to be present, with counsel, when the court imposed that part of his sentences.[30] See United States v. Huff, 512 F.2d 66, 71 (5th Cir. 1975) ("[S]entencing is, of

---

[28] I do not mean to suggest that the defects in the sentencing process would render an otherwise final judgment not final. Clearly we would have jurisdiction to entertain the appeal of a final judgment imposed in violation of the defendant's constitutional right to be present; in that case we would vacate the judgment and remand the case for resentencing. In the instant case, the flaws in sentencing process lend further support to the court's statement at the conclusion of the June 30 proceeding that Muzio would have to be present when the court determined the amount and recipients of restitution to be paid before sentencing would be complete and the court would enter an amended final judgment, which would enable our review.

[29] 18 U.S.C. § 3556, "Order of restitution," states: "The court, in imposing a sentence on a defendant who has been found guilty of an offense shall order restitution in accordance with section 3663A, and may order restitution in accordance with section 3663."

[30] This right is also codified in Federal Rule of Criminal Procedure 43, "Defendant's presence." That rule states, in pertinent part: "Unless this rule . . . provides otherwise, the defendant must be present at . . . sentencing." Fed. R. Crim. P. 43(a)(3).

course, a critical stage of the proceedings against the accused, at which he is constitutionally entitled to be present and represented by counsel." (citing Mempa v. Rhay, 389 U.S. 128, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967))).[31]  The District Court acknowledged that Muzio had such a right when the restitution issue surfaced during the June 30, 2010, sentencing proceeding.  After the court sentenced Muzio to prison for 163 months, Rochlin informed the court that it had to include a restitution order as part of Muzio's sentences because restitution was mandatory.  She asked the court to order restitution of $631,976.80 on the spot, but when the court inquired whether the victims to be paid had been identified, the Probation Officer, Laurie, said that "Probation [had] not determined the exact victim list [and needed] the 90 days hearing to certify and verify with the victims that they [had] been contacted, what their reported loss amounts are and speak with the agent to determine the most appropriate amount for each victim."  Doc. 191, at 16.  With that, the court announced that it would "schedule a hearing" to determine that amount and that "the defendant [would] have to be brought back from wherever he is [incarcerated]."  Doc. 191, at 17.  As it turned out, Muzio was not brought back for the proceeding before the Magistrate Judge; nor was he present when the District Court adopted the Magistrate Judge's recommendation and

---

[31] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

entered the order requiring Rochlin to prepare and submit to the court a final

judgment incorporating a restitution order in the sum of $631,976.06.

Second, in addition to affording Muzio his right to be present, with counsel,

when the District Court determined the amount of restitution to be paid, the

District Court had to comply with the mandates of Rule 32 of the Federal Rules of

Criminal Procedure.  Section (i)(1)(A) of Rule 32 required the court to "verify"

that Muzio and his attorney had read and discussed the memorandum the Probation

Officer submitted to the Magistrate Judge prior to the "Status Conference" held on

September 29, 2010, which detailed the amount of restitution owed each victim,[32]

and section (i)(4)(A) required the court, before imposing the restitution order, to

"provide [Muzio's] attorney an opportunity to speak on [Muzio's] behalf" and to

"address [Muzio] personally in order to permit [Muzio] to speak or present any

information to mitigate the sentence."[33]  Cf. United States v. Gilbert, 244 F.3d 888,

924 (11th Cir. 2001) ("As [the defendant] was not afforded an opportunity to

allocute . . . , the purported order of forfeiture entered on that date could not have

---

[32] See Fed. R. Crim. P. 32(i)(1)(A) ("At sentencing, the court . . . must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report . . . .").

[33] Federal Rule of Criminal Procedure 32(i)(4)(A) provides:
Before imposing sentence, the court must:
(i) provide the defendant's attorney an opportunity to speak on the defendant's behalf;
(ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence; and
(iii) provide an attorney for the government an opportunity to speak equivalent to that of the defendant's attorney.

been part of his sentence.").[34]  Muzio was afforded none of these rights.  In short,

Muzio's sentencing—to the extent that it includes restitution—has yet to occur.

Third, and relatedly, by not providing Muzio with an opportunity to be

present, the District Court failed to elicit "fully articulated objections, following

imposition of sentence, to its ultimate findings of fact and conclusions of law," as

required by United States v. Jones, 899 F.2d 1097, 1102 (11th Cir. 1990).  We

routinely vacate and remand for resentencing cases in which the district court has

failed to comply with Jones.  Id. at 1103.  The transcript of the June 30 sentencing

hearing makes clear that the District Court understood the importance of

---

[34] In his concurring opinion, Judge Coogler cites United States v. Gilbert, 244 F.3d 888 (11th Cir. 2001), for the proposition that we have "implicitly not found appellate jurisdiction lacking where the district court failed to include another type of required sentencing element— specifically forfeiture—in the sentencing judgment."  Concurring op. at 3.  Gilbert does not stand for such a proposition.

In Gilbert, the defendant was convicted of violating RICO, and as such, the District Court was required to include forfeiture as part of the defendant's sentence.  Id. at 924.  The district court entered what purported to be a forfeiture order, but it did so in the absence of the defendant.  Id.  When the district court entered a final judgment four months after the purported forfeiture order, the judgment did not contain a forfeiture order.  Id. at 924 n.80.  We concluded that the forfeiture was not part of the defendant's sentence because the defendant was not afforded his right of allocution.  Id. at 924–25.  However, we suggested that because the district court imposed a final sentence in violation of law, the Government had a right to appeal, pursuant to 18 U.S.C. § 3742(b)(1).  Id. at 924 n.81.  The Gilbert panel had no occasion to grapple with the jurisdictional question presented by the present case.  However, not allowing Muzio's appeal to proceed is consistent with Gilbert because, unlike the present case, the district court in Gilbert thought it had completed the sentencing process.  Therefore, we had a "final sentence" that was "imposed in violation of law"; hence, the jurisdictional requirements of 18 U.S.C. § 3742(b) were satisfied.

In the present case, the District Court was aware that it had not completed sentencing the defendant.  Had the court said nothing about restitution and issued what it considered to be a final judgment without imposing restitution, then Gilbert's footnote would be on-point. However, as I have repeated elsewhere, the District Court's July Judgment expressly stated that an amended final judgment would be forthcoming with restitution included.  It never came. Thus, we do not have a final judgment, and we lack jurisdiction—under 18 U.S.C. § 3742(a) or 28 U.S.C. § 1291—to hear this appeal.

55

conforming to the <u>Jones</u> requirement after pronouncing sentence.  Surely, then, the court would have realized that another <u>Jones</u> colloquy would be required after it announced its restitution decision.[35]

The record does not explain why Rochlin failed to submit a "Final Judgment to [the] Court" as required by the second restitution order issued on November 3, 2010.  Nor does the answer brief the Government filed in this appeal.  One reason may be that Rochlin was simply at a loss as to what to do after the court ordered her to prepare and submit a Final Judgment to the court.  As a prosecutor, she knew full well that ordering a defendant to pay restitution is a sentencing decision and that the Constitution and Rule 43 required Muzio's presence, with counsel, in open court as provided in Rule 32 when the court announced its decision.[36]  So, instead of suggesting that the court do what the law clearly required, she did nothing.  Rochlin's inaction did not transform the District Court's November 3 order into a final judgment subject to appeal.  Her inaction ensured that the District

_____

[35] Indeed, Rosenbaum's objections to the Magistrate Judge's Report and Recommendation demonstrated that had a <u>Jones</u> colloquy occurred, Rosenbaum would have placed his objections on the record.  And in the "Objection of Restitution Hearing" Muzio filed on November 22, 2010, Muzio requested a hearing to "present evidence to refute Government testimony" on the restitution issue.

[36] I assume that the U.S. Attorney was aware that the Constitution and Federal Rules of Criminal Procedure 32 and 43 required Muzio's presence, with counsel, when the court announced its restitution decision.  Yet, in his brief on appeal and notwithstanding the failure of the District Court to afford Muzio his right to be present with counsel, he asks this court to affirm Muzio's sentences, including the restitution assessed in the District Court's November 3, 2010, order.

Court never completed the process it began by adopting the Magistrate Judge's

Report and Recommendation.[37]

---

[37] The majority suggests that requiring a defendant to wait until the court has completed its sentencing task before seeking an appeal "might raise constitutional problems of significant proportions." Majority op. at 22 (quoting Corey v. United States, 375 U.S. 169, 173, 84 S. Ct. 298, 302, 11 L. Ed. 2d 229 (1963)). However, the majority does not identify the provisions of the Constitution that might be implicated. There are none.

"[I]t is well settled that there is no constitutional right to an appeal." Abney v. United States, 431 U.S. 651, 656, 97 S. Ct. 2034, 2038, 52 L. Ed. 2d 651 (1977) (citing McKane v. Durston, 153 U.S. 684, 14 S. Ct. 913, 38 L. Ed. 87 (1894)). Nor did such a right exist at common law. Martinez v. Court of Appeal, 528 U.S. 152, 159, 120 S. Ct. 684, 690, 145 L. Ed. 2d 597 (2000). A right to appeal is not an essential requirement of due process. Reetz v. Michigan, 188 U.S. 505, 508, 23 S. Ct. 390, 392, 47 L. Ed. 563 (1903). The Sixth Amendment does not guarantee one. Martinez, 528 U.S. at 160, 120 S. Ct. at 690.

What, then, are the "constitutional problems" that might arise by dismissing this appeal for want of jurisdiction? The majority relies on stray dicta from Corey, wherein the Supreme Court suggested that requiring a defendant to delay an appeal under the since-repealed 18 U.S.C. § 4208(b) "might raise constitutional problems of significant proportions." Corey, 375 U.S. at 173, 84 S. Ct. at 302. But this statement—undeveloped and unsubstantiated as it is and referring to a sentencing scheme materially at odds with one established by the Sentencing Reform Act of 1984—cannot withstand the definitive and consistent statements of the Supreme Court that there is simply no constitutional right to an appeal. See, e.g., Martinez, 528 U.S. at 160, 120 S. Ct. at 690; Abney, 431 U.S. at 656, 97 S. Ct. at 2038; Reetz, 188 U.S. at 508, 23 S. Ct. at 392; McKane, 153 U.S. at 687–88, 14 S. Ct. at 915.

"The right of appeal, as we presently know it in criminal cases, is purely a creature of statute." Abney, 431 U.S. at 656, 97 S. Ct. at 2038. For the first century of this Nation's existence, criminal defendants had no right to appeal at all. Id. In 1889, Congress provided that in all cases in which a defendant is sentenced to death, the Supreme Court "shall, upon the application of the respondent, be reexamined, reversed, or affirmed by the Supreme Court of the United States upon a writ of error." Act of Feb. 6, 1889, § 6, 25 Stat. 655, 656. Then, in 1911, Congress granted the courts of appeals the authority to review criminal cases. See Act of Mar. 3 1911, § 128, 36 Stat. 1087, 1133–34. Today, the right to appeal a conviction is enshrined in 28 U.S.C. § 1291; and the right to appeal a sentence is provided by 18 U.S.C. § 3742. Both sections require that an appeal will not lie until the district court has entered a final decision. Neither mandates that we review a provisional decision.

The majority's concern about the time Muzio has spent in custody pending appeal is policy-driven, nothing more. No constitutional provision guarantees a right to an appeal, let alone a speedy right to appeal. Congress has not, in limiting our jurisdiction to final decisions, created an exception for appellants who happen to be in federal custody.

IV.

The majority never engages in the analysis I put forth in part III.  Instead, it holds that "[b]ased on Supreme Court precedent . . . the July Judgment is final for purposes of appeal because it sentenced Muzio to a term of imprisonment." Majority op. at 8.  The majority then cites a string of Supreme Court decisions, none of which supports the broad proposition that a sentence of imprisonment is sufficient to trigger appellate review when the case is still within the District Court's jurisdiction.

A.

The majority contends that "[b]inding precedent from the Supreme Court's decision in <u>Corey</u> is directly on point."  Majority op. at 9.  It is not.  The majority's reliance on <u>Corey v. United States</u>, 375 U.S. 169, 84 S. Ct. 298, 11 L. Ed. 2d 229 (1963), is misplaced.  In <u>Corey</u>, the defendant was sentenced under a since-repealed statute, 18 U.S.C. § 4208 (1958) (repealed 1987), which was titled "Fixing eligibility for parole at the time of sentencing."  Under that statute, "[u]pon entering a judgment of conviction," the court could sentence the defendant to (1) the minimum term of imprisonment, after which the defendant would be eligible for parole, or (2) the maximum term of imprisonment, with a possibility of parole

58

at the discretion of the U.S. Board of Parole.[38]  18 U.S.C. § 4208(a).  Section 4208

provided a third option, which the district court in Corey utilized.  Under

§ 4208(b):

> If the court desires more detailed information as a basis for
> determining the sentence to be imposed, the court may commit the
> defendant to the custody of the Attorney General, which commitment
> shall be deemed to be for the maximum sentence of imprisonment
> prescribed by law, for a study as described in subsection (c) hereof.
> The results of such study, together with any recommendations which
> the Director of the Bureau of Prisons believes would be helpful in
> determining the disposition of the case, shall be furnished to the court
> within three months unless the court grants time, not to exceed an
> additional three months, for further study.  After receiving such
> reports and recommendations, the court may in its discretion: (1)
> Place the prisoner on probation . . . or (2) affirm the sentence of
> imprisonment originally imposed, or reduce the sentence of
> imprisonment, and commit the offender under any applicable
> provision of law.  The term of the sentence shall run from date of
> original commitment under this section.

18 U.S.C. § 4208(b).

As the Supreme Court explained, the district court entered an order

committing Corey to the custody of the Attorney General for a study

under § 4208(b), Corey, 375 U.S. at 170, 84 S. Ct. at 300, which meant that he was

committed for the maximum sentence possible until the court acted again.  Over

---

[38] On the effective date of the Parole Commission and Reorganization Act of 1976, May 14, 1976, the U.S. Board of Parole became the U.S. Parole Commission.  Under the Comprehensive Crime Control Act of 1984, the Parole Commission retained jurisdiction over defendants who committed their offenses prior to November 1, 1987.  At the same time, the Act provided for the abolition of the Parole Commission on November 1, 1992 (five years after the Sentencing Guidelines took effect).  The Judicial Improvements Act of 1990 extended the life of the Parole Commission until November 1, 1997.

three months later, after considering the reports submitted by the Bureau of Prisons, the District Court entered an order suspending the imposition of Corey's sentence and placing him on probation for two years.  Id.  Thereafter, Corey appealed his convictions,[39] and the Court of Appeals dismissed the appeal for want of jurisdiction because it was filed out of time.  Id.  The Supreme Court reversed, concluding that a defendant sentenced pursuant to § 4208(b) could appeal his convictions following the entry of an order committing him to the custody of the Attorney General for a study or after the later order imposing the defendant's actual sentence, because "the trial judge sentences a convicted defendant not once, but twice."  Id. at 172, 84 S. Ct. at 301.

A close reading of Corey confirms that § 4208(b)'s unique procedures created a situation whereby the initial commitment "sufficiently satisfies conventional requirements of finality for purposes of appeal."  Id. at 174, 84 S. Ct. at 302.  By contrast, Muzio has not been sentenced twice; he has not been sentenced at all.  Muzio would be sentenced after the District Court determined the amount of restitution due in a sentencing hearing conducted in accordance with Rule 32 and then entered a final judgment.  The District Court acknowledged as

---

[39] The law in effect at the time did not give a defendant the right to appeal his sentence. It was not until the enactment of the Sentencing Reform Act of 1984 that Congress gave the defendant such right.  See 18 U.S.C. § 3742(a); see also Koon v. United States, 518 U.S. 81, 96, 116 S. Ct. 2035, 2045, 135 L. Ed. 2d 392 (1996) ("Before the Guidelines system, a federal criminal sentence within statutory limits was, for all practical purposes, not reviewable on appeal.").

much on June 30, 2010, when it announced that it would determine the restitution to be ordered at a later hearing to be held for that purpose.

A sentence that includes imprisonment and restitution is part of one complete sentencing package. These elements cannot be considered independently; they are interrelated. Until the sentencing package is complete, the sentencing process is necessarily unfinished. Finality, which was present in Corey, is lacking here.

The other cases relied on by the majority fare no better. In Berman v. United States, 302 U.S. 211, 58 S. Ct. 164, 82 L. Ed. 204 (1937), the Court of Appeals dismissed the defendant's appeal on the ground that the District Court's judgment was interlocutory—because the court had suspended the execution of the defendant's sentence, a term of imprisonment, and placed him on probation. Id. at 212, 58 S. Ct. at 165–66. The Supreme Court reversed.

> [T]he imposition of the sentence was not suspended, but only its execution. The sentence was not vacated. It stood as a final determination of the merits of the criminal charge. To create finality it was necessary that petitioner's conviction should be followed by sentence but when so followed the finality of the judgment was not lost because execution was suspended.

Id., 58 S. Ct. at 166 (citation omitted). Likewise, in Korematsu v. United States, 319 U.S. 432, 63 S. Ct. 1124, 87 L. Ed. 1497 (1943), the defendant was convicted and the district court, at sentencing, suspended the imposition of sentence and placed the defendant on probation. Id. at 432–43, 63 S. Ct. at 1124–25. The

61

Supreme Court concluded that the order was appealable to the circuit court because "[t]he probationary surveillance is the same whether or not sentence is imposed." Id. at 434, 63 S. Ct. at 1125.

Cobbledick v. United States, 309 U.S. 323, 60 S. Ct. 540, 84 L. Ed. 783 (1940), barely deserves mention, but because it features prominently in the majority's opinion, I feel compelled to explain why it is inapposite. According to the majority, Cobbledick explains that "even though delays and piecemeal litigation may result, an interlocutory appeal in a criminal case is permissible when the alternative is to force a party to 'abandon [his] claim or languish in jail.'" Majority op. at 11 (quoting Cobbledick, 309 U.S. at 328, 60 S. Ct. at 542). This representation of Cobbledick is, simply, inaccurate. And the Cobbledick language the majority quotes, while colorful, is severely lacking in context.

In Cobbledick, grand jury witnesses appealed a district court's order denying their motions to quash subpoenas. Id. at 324, 60 S. Ct. at 540. The Ninth Circuit treated the order as interlocutory and dismissed the appeal for lack of a final judgment. Id. at 324, 60 S. Ct. at 540–41. The Supreme Court affirmed. Id. at 330, 60 S. Ct. at 543.

In discussing why the District Court's denial of the motion to quash did not warrant interlocutory review, the Supreme Court noted that "[w]hatever right [the grand jury witness] may have requires no further protection . . . until the witness

62

choses to disobey and is committed for contempt." Id. at 328, 60 S. Ct. at 542. Once a witness refuses to testify and is held in contempt, his "situation becomes so severed from the main proceeding as to permit an appeal." Id. The Court acknowledged that holding a witness in contempt and permitting an appeal "may involve an interruption of the trial or of the investigation. But not to allow this interruption would forever preclude review of the witness's claim, for his alternatives are to abandon the claim or languish in jail." Id.

In other words, Cobbledick does not stand for the broad proposition that "we need not insist on finality at all . . . if the cost is indefinitely depriving imprisoned parties of their right to appeal." Majority op. at 17–18. Far from it. Cobbledick speaks to the choice witnesses face when refusing to testify and the fact that our system of criminal justice will tolerate the delay of the criminal process that ensues from exercising the right to challenge a contempt order in an independent proceeding. A contempt proceeding against a grand jury witness is entirely separate from the underlying criminal prosecution. Once a witness is held in contempt and sanctioned, that order is final; hence, the right to appeal. Contrary to the majority's contention, Cobbledick has absolutely nothing to do with the case at hand.[40]

_____

[40] My objection to the majority's reliance on Cobbledick is not based on the factual distinctions between that case and this one. I object because Cobbledick is legally inapposite. The majority states that Cobbledick explains that "even though delays in piecemeal litigation

The majority reads the statement "when discipline has been imposed, the defendant is entitled to review," Korematsu, 319 U.S. at 434, 63 S. Ct. at 1125, far too broadly. Imprisonment itself is not a trigger for appellate review. As in Corey, in Berman and Korematsu sentencing was complete. Here it is not. That is, the July Judgment lacks the finality the majority claims it possesses. By its own terms, there was more to be done, and as such the July Judgment is not independently appealable. And, as I have explained above, the sentencing process was not concluded by the November order. Therefore, we should dismiss this appeal.

B.

As an apparent alternative holding, the court holds that a defendant has a right to appeal "as soon as he begins serving a sentence of imprisonment" even though restitution has yet to be ordered. Majority op. at 24. This statement implies that a defendant who has not begun serving his sentence of imprisonment—because he has been admitted to bail pending sentencing—may not

---

may result, an interlocutory appeal in a criminal case is permissible when the alternative is to force the party to 'abandon [his] claim or languish in jail.'" Majority op. at 11 (quoting Cobbledick, 309 U.S. at 328, 60 S. Ct. at 542). This is a patent misreading of Cobbledick. Cobbledick says that there will not be an interlocutory appeal from a court's denial of a motion to quash subpoenas. And the situations in which the Supreme Court has allowed interlocutory review are extremely limited. See infra part V.

The majority states that "when the rule that judgments are not appealable until final cannot be observed without undermining a defendant's right to appeal—by, for example, indefinitely delaying that right—the former rule gives way to the latter right." Majority op. at 13 n.8. The example provided, however, has been woven out of whole cloth. The majority's reliance on Cobbledick is misplaced, for that case simply does not support any of the arguments put forth in support of entertaining Muzio's appeal.

appeal until the issue of restitution has been resolved and a final judgment is

entered.[41] Treating a judgment as final depending on whether the defendant is in

custody or has been released on bail makes no sense.[42] What seems to concern the

majority is the District Court's delay in resolving the restitution issue—that Muzio,

sitting in jail, is, in effect, being punished for the delay.[43] The delay is the result of

Rochlin's failure to prepare and submit to the District Court an amended final

judgment, the court's failure to enter one on its own initiative, and Muzio's

multiple requests for new representation. Putting Muzio's requests for new

representation aside, if the court's delay in completing its sentencing task was

causing Muzio undue prejudice, he could avoid the prejudice by seeking a writ of

mandamus requiring the District Court to do what the law required: convene a Rule

---

[41] The court holds that serving a term of imprisonment is sufficient, though perhaps not necessary, to render a judgment final. The majority explains that the court can leave for another day what the minimum threshold might be, and in doing so sets the stage for further litigation and, until the threshold is determined, considerable uncertainty regarding precisely when an appealable final judgment has been entered in those cases in which the district court retains jurisdiction for the purpose of entering an order on restitution (and if granted entering a final judgment).

[42] Under 18 U.S.C. § 3143(a)(1), the court "shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained." If, however, "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," then that officer may release the defendant on his own recognizance or on bail. See 18 U.S.C. § 3143(a)(1).

[43] Until the District Court enters a final judgment incorporating a restitution order, it has jurisdiction over Muzio's case and his prison sentences are provisional. Thus, when the court remanded him to the custody of the U.S. Marshals at the conclusion of the June 30, 2010, hearing, it did so pursuant to its authority to detain him pending the completion of the sentencing proceeding. This period of detention coupled with the time Muzio spent in pretrial detention will be credited toward Muzio's term of imprisonment once the execution of his sentences begins. See 18 U.S.C. § 3585.

65

32 hearing, consider the amount of restitution the evidence required, and determine whether to make final the prison sentences provisionally imposed on June 30, 2010.

## V.

Finally, after conjuring up a jurisdictional basis for entertaining this appeal, the majority "affirm[s] Muzio's sentence[s] and conviction[s], without commenting on the aspects of his sentence[s] related to restitution."  Majority op. at 25.  Because the District Court has retained jurisdiction over this case, the majority, at least to the extent that it is reviewing Muzio's prison sentences,[44] is reviewing an interlocutory order.[45]  We have jurisdiction to review "<u>final</u> decisions of the district courts."  28 U.S.C. § 1291 (emphasis added).  We also have jurisdiction to review "<u>final</u> sentence[s]" of the district courts. 18 U.S.C. § 3742

---

[44] In his brief on appeal, Muzio challenged the sentenced imposed on June 30, 2010, on these grounds:
>    Whether the trial court erred when it imposed an unreasonable sentence as outlined in 18 U.S.C. § 3553(a).
>    Whether the trial court erred in calculating the defendant's advisory sentencing guidelines in assessing a two level increase pursuant to § 2B1.1 for sophisticated means.
>    Whether the trial court erred in calculating the defendant's advisory sentencing guidelines in assessing a four level role increase pursuant to § 3B1.1 as an organizer or leader.
>    Whether the trial court erred in calculating the defendant's advisory sentencing guidelines in assessing a two level role increase pursuant to § 3B1.1.3 for abuse of a position of trust.

[45] The majority gives the game away in footnote 9 of its opinion by giving legal effect to the notice of appeal Muzio filed on July 15, 2010, and requiring him to file a second notice of appeal from the District Court's amended final judgment containing a restitution order, if he wants to challenge that order.

(emphasis added).[46]  As the Supreme Court has observed, the "policy" underpinning § 1291 "is inimical to piecemeal appellate review of trial court decisions which do not terminate the litigation, and . . . this policy is at its strongest in the field of criminal law."  United States v. Hollywood Motor Car Co., 458 U.S. 263, 265, 102 S. Ct. 3081, 3082, 73 L. Ed. 2d 754 (1982); see also SEC v. Carrillo, 325 F.3d 1268, 1272 (11th Cir. 2003) ("Although the 'final judgment rule' serves many purposes, one of its central objectives is to ensure that this court does not engage in piecemeal appellate review.").  So, too, the policy underpinning § 3742.

An interlocutory order is considered "final," and thus subject to appellate review, where the "order . . . conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment."  Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S. Ct. 2454, 2458, 57 L. Ed. 2d 351 (1978).  However, the Supreme Court has carefully circumscribed the situations in which an appeal can be taken of an interlocutory order in a criminal case.  I have found only three in the Court's jurisprudence.  In each of the cases, the Supreme Court departed from the final judgment rule because the appeal involved "an

---

[46] The United States and the defendant both have the right to appeal "an otherwise final sentence" on the ground, among others, that the sentence "was imposed in violation of law."  18 U.S.C. §§ 3742(a)(1), (b)(1).  Subsections 3742(a) and (b) imply that a non-final sentence is not reviewable.  In affirming Muzio's prison sentences "without commenting on the aspects of his sentence[s] related to restitution," Majority op. at 25, however, the court appears to be reviewing a non-final sentence contrary to this implication.

67

asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." United States v. Hollywood Motor Car Co., 458 U.S. 263, 266, 102 S. Ct. 3081, 3083, 73 L. Ed. 2d 754 (1982) (quoting United States v. MacDonald, 435 U.S. 850, 860, 98 S. Ct. 1547, 1552, 56 L. Ed. 2d 18 (1978)). An interlocutory order in a criminal case is considered "final," and subject to appellate review at the defendant's behest, where the order denies the defendant's motion to reduce bail, see Stack v. Boyle, 342 U.S. 1, 6, 72 S. Ct. 1, 4, 96 L. Ed. 3 (1951); denies the defendant's motion to dismiss the indictment on Double Jeopardy grounds, see Abney v. United States, 431 U.S. 651, 659, 97 S. Ct. 2034, 2040, 52 L. Ed. 2d 651 (1977); or denies a U.S. Congressman's right to immunity from prosecution on Speech and Debate Clause grounds, see Helstoski v. Meanor, 442 U.S. 500, 508, 99 S. Ct. 2445, 2449, 61 L. Ed. 2d 30 (1979). These orders are appealable because they do not involve the merits of the criminal prosecution and would be effectively unreviewable on appeal from the final judgment.

## A.

Nothing in the Supreme Court decisions the majority has cited counsels a need to review Muzio's convictions and prison sentences at this point in time. Why? Because this court will review them after the District Court resolves the restitution issues following a Rule 32 hearing and enters an amended final judgment. In the mine run case, where the court imposes a prison sentence and

68

retains jurisdiction to enter a restitution order later, the court may, after deciding to include restitution as part of the defendant's sentencing package,[47] find it necessary to revisit the prison sentence in order to comply with the command of the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(a), that the defendant's sentence be "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. In a case where the defendant's imprisonment is implicated, those purposes include the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)–(C). The court must also

---

[47] To be sure, 18 U.S.C. § 3664(o) provides that "[a] sentence that imposes an order of restitution is a final judgment notwithstanding the fact that . . . such a sentence can subsequently be . . . amended under subsection (d)(5)." However, when § 3664(d)(5) speaks of amendment, it does so in a limited context. Specifically, that subsection states,

> If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

18 U.S.C. § 3664(d)(5). Reading these two provisions together, a sentence that imposes restitution is final despite the fact that victims may subsequently discover new losses that will be added to the initial order. This amendment is different in-kind from the initial determination of the proper restitution amount. That is, § 3664(o) cannot be plausibly read to mean that the initial determination—going from zero dollars to potentially millions of dollars—is an "amendment."

The other modifications listed in § 3664(o) are similarly circumscribed. It is not the case, as the majority seems to suggest, that once it determines the amount of restitution to be paid the district court retains a freewheeling ability to alter that amount. The same goes for corrections modifications to terms of imprisonment under 18 U.S.C. § 3582(b).

Nor can the subsequent determination of the restitution amount be deemed a "clerical error." "Rule 36 [of the Federal Rules of Criminal Procedure] can be used to correct 'clerical' errors; it cannot be used, as it was here, to make a substantive alteration to a criminal sentence." United States v. Pease, 331 F.3d 809, 816 (11th Cir. 2003).

69

consider "the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a)(7).

It is not difficult to conjure a case in which a restitution calculation made at a hearing held following the imposition of a provisional prison sentence will require the court to reconsider such sentence.  District courts, in determining "the sentence to be imposed," are directed to consider the sentencing factors listed in 18 U.S.C. § 3553(a), one of which is the need for restitution.  18 U.S.C. § 3582.  Suppose the term of imprisonment is driven by the victims' losses calculated under U.S.C.G. § 2B1.1(b), the same losses that will be taken into account in fixing the amount of restitution.  If the court defers its restitution determination for, say, 90 days, it may turn out that the amount of restitution actually due (after the Probation Office has an opportunity to determine the full extent of the victims' losses) is much higher or lower than the losses fixed by § 2B1.1(b).  As a result, the court might conclude that the term of imprisonment should be adjusted because the § 2B1.1(b) calculation was erroneous.  Although in most cases, the restitution the court orders may not provide a basis for reducing the length of imprisonment needed to satisfy § 3553(a)(2)(A)–(C)'s purposes, we have indicated that "extraordinary restitution, whether paid before or after adjudication of guilt, may,

70

in the unusual case, support a departure from the guidelines." United States v. Kim, 364 F.3d 1235, 1238 (11th Cir. 2004).[48]

The majority's holding that Muzio's sentences are reviewable now applies not only to this case, but to others yet to come down the pike. Suppose a scenario like the one here; we affirm the defendant's convictions and sentences of imprisonment and leave for another day the review of a restitution order.[49] Suppose further that, after our mandate issues and the case is back in the district court, the court, in imposing restitution, reassesses the provisional sentences of imprisonment and decides to reduce their terms. Would the law-of-the-case doctrine preclude it from doing so?[50] Not if this court's affirmance of the

---

[48] Another example, although not implicated in this case, would involve the provisional imposition of a fine and a later determination that restitution is due. To illustrate, suppose a case in which the court imposes a fine as part of the provisional sentence but leaves the amount of restitution to be determined later. The court, after determining that restitution must be paid, should reevaluate the amount of the fine imposed to ensure that after paying the fine, the defendant will be able to make restitution in full. See 18 U.S.C. § 3572(b) ("If, as a result of a conviction, the defendant has the obligation to make restitution to a victim of the offense, other than the United States, the court shall impose a fine or other monetary penalty only to the extent that such fine or penalty will not impair the ability of the defendant to make restitution.").

A similar case can be made for forfeiture. See Pease, 331 F.3d at 816 n.18 ("In sum, forfeiture is part of the defendant's sentencing package for an obvious reason. The magnitude of the forfeiture may influence how the court treats the other parts of the package. For example, if forfeiture is sizeable, the court may impose a fine at the bottom of the Sentencing Guidelines range or, if the forfeiture would render the defendant impecunious, perhaps no fine at all.").

[49] The court's decision to leave the review of the restitution issues for another day implies that the District Court, after receiving our mandate, will have jurisdiction to order restitution. If our decision were treated as the disposition of an interlocutory appeal, the District Court's jurisdiction would be the jurisdiction it retained after issuing the provisional sentences on June 30, 2010. If today's decision were treated as final, query the source of the District Court's jurisdiction to address the restitution issues following receipt of our mandate.

[50] I recognize that the Supreme Court, in dicta, has suggested that "strong arguments favor the appealability of the initial judgment irrespective of the delay in determining the

71

sentences is provisional.  And who would have the last word on whether it is provisional?  Not the district court.  This court would decide.  Yet the majority provides no guidance today for the courts who will have to grapple with its decision.

## B.

The majority argues that in a cases like Muzio's, where the District Court defers the entry of an order of restitution pursuant to 18 U.S.C. § 3664(d)(5), the appeal of the defendant's conviction and provisional sentence should go forward prior to the entry of the restitution order because of "the possibility that defendants whose initial sentences include a deferred order of restitution will be denied their right to appeal indefinitely."  Majority op. at 6.  The Majority overstates the gravity of this problem.  As the Supreme Court noted in Dolan,

> the defendant normally can mitigate any harm that a missed deadline might cause—at least if, as here, he obtains the relevant information regarding the restitution amount before the 90-day deadline expires. A defendant who fears the deadline will be (or just has been) missed can simply tell the court, which will then likely set a timely hearing or take other statutorily required action.  Though a deliberate failure of the sentencing court to comply with the statute seems improbable, should that occur, the defendant can also seek mandamus.

Dolan, 560 U.S. at 615–16, 130 S. Ct. at 2541 (citations omitted).

---

restitution amount."  Dolan, 560 U.S. at 617, 130 S. Ct. at 2542.  But the Court has said nothing—in Dolan or any other decision—that would indicate how the law of the case problem should be handled.

72

Moreover, not every delay is cause for concern. Suppose two cases. In both cases, defense counsel, in order to protect the defendant's right to appeal, files a notice of appeal within 14 days of the entry of the provisional final judgment.[51] In the first case, the defendant has been released on bail pending appeal and whatever time the district court takes to rule on the restitution issues suits him just fine. As long as he is at liberty, the district court can take as much time as it wants.[52] Meanwhile, the delay isn't bothering the Government. So, why in the first case, should this court order the parties to brief and prosecute an interlocutory appeal? Since neither side wants to go forward, the assumption is that justice is being served. Perhaps the defendant is cooperating with the Government and both sides want the case held in abeyance for the time being. But that is just one reason why they would want the appeal stayed. The point is that we needn't create an exception to the final judgment rule and require the parties to go forward.

In the second case, the defendant is in custody. His lawyer advises him that two appeals—an interlocutory appeal from the provisional final judgment and an

---

[51] See generally Fed. R. App. P. 4(b)(1)(A). Experience teaches that in practically every case, defense counsel files a notice of appeal once the final judgment is entered. In this case, Muzio's attorney, Caridad, moved the District Court for leave to withdraw and while the motion was pending filed a notice of appeal. This overly cautious approach in no way affects this court's exercise of jurisdiction because the July Judgment was not an appealable judgment.

[52] The majority notes that defendants "will often choose to wait until all issues have been resolved so that the sentence can be appealed as a whole." Majority op. at 17. But if that is the case, why unnecessarily complicate matters by allowing two appeals? The fact that defendants will often choose not to seek interlocutory review is all the more reason not to allow it at all.

73

appeal from the final sentence under 18 U.S.C. § 3742(a)—are not in his best interests (for the reasons I have explained).  If counsel advises the defendant that there is a good chance that his conviction will be reversed, counsel will be urging the district court to resolve the restitution issues and enter a final judgment.  And the Government might move the court to conclude the sentencing as well, because it wants to appeal the defendant's sentence, under 18 U.S.C. § 3742(b).  The upshot is that neither side will want to undergo two appeals in the second case.

VI.

I would be remiss if I did not take a moment to explain how the cause of the problem in this case lies squarely at the feet of Congress.  In short, 18 U.S.C. § 3664(d)(5) is unnecessary and immensely misguided.  By allowing the district courts to bifurcate the sentencing proceeding, with the imposition of the restitution part of the sentence being delayed for as much as 90 days after the proceeding begins, Congress has created a scheme that puts the sentencing judge in an unviable position of wasting scarce judicial resources.  Moreover, the holding two separate sentencing hearings creates the impression that the second hearing is only for show.

As I have already explained, constitutional law, statutory and rule-based directives, and precedent require that a defendant be present and given the opportunity to speak during sentencing.  Therefore, when the sentencing

74

proceeding is bifurcated and, as here, the defendant is in custody, the Government incurs the expense of transporting the defendant from the place of his incarceration to the courthouse a second time.[53] Moreover, holding two sentencing hearings when one would suffice wastes judicial time and parajudicial resources.

Holding two hearings creates still another problem. The second hearing—which should be the main event since it is where the sentencing package is finally put together—may turn out to be perfunctory due to the court's reluctance to back track and abandon findings it made at the first hearing. If that occurs, what is the defendant to make of his Rule 32 right to be present and "to speak or present any information to mitigate the sentence"? Is it merely window dressing?

Congress ought to go back to the drawing board and rework 18 U.S.C. § 3664(d)(5). Rather than allowing a court to hold an initial sentencing hearing, impose a provisional sentence, and then determine and impose restitution 90 days later, district courts should be permitted to defer the entire sentencing process until the parties and the Probation Office have presented the court with a complete picture of the amount of loss and ascertainable victims. That way, we would not have this problem of provisional and final sentences, and the embarrassing scenario this case depicts could have been avoided.

---

[53] I assume from the position the United States took in its brief that the Government would contend the defendant's presence is not required at the second hearing. See supra note 36.

VII.

In the introduction to this opinion, I said that the position the court is taking today ignores the policies underpinning the final judgment rule. The preceding discussion makes this clear. In entertaining an interlocutory appeal from a provisional sentence, this court either (1) precludes the District Court, after determining that restitution is to be part of Muzio's sentences, from exercising its jurisdiction to reassess the provisional sentences and to modify them to the extent the § 3553(a) sentencing factors require, or (2) invites the District Court to exercise such jurisdiction, in which case this court's affirmance of Muzio's prison sentences may be rendered provisional. Under either scenario, the District Court's amended final judgment will be subject to an appeal—by the defendant or the Government—under 18 U.S.C. § 3742.

The United States has urged the court to entertain this appeal on the merits. In its response to the question of whether we had jurisdiction to do so, it stated that "the notice of appeal was timely to appeal the judgment and the restitution order." Gov't Juris. Resp. at 7. And its brief concluded with the statement: "the district court's decision should be affirmed." Gov't Br. at 60. In the introduction, I said that this court's, and the Government's, position is indefensible. The most shocking to me of all is the U.S. Attorney's position before the District Court after it received the Magistrate Judge's Report and Recommendation. The U.S.

76

Attorney stood by while the District Court imposed a restitution order without convening a Rule 32 sentencing hearing and having Muzio present with counsel—in blatant derogation of his rights under the Constitution and Rules 32 and 43. And he asked this court to affirm the restitution order in the face of plain error.

The majority abdicates our responsibility to decline to exercise appellate jurisdiction over cases for which a final judgment has not been entered. Because the majority reaches a conclusion at odds with the "general rule [that] federal courts of appeals have jurisdiction to review only 'final decisions' of lower federal courts," Carrillo, 325 F.3d at 1272 (quoting 28 U.S.C. § 1291), I dissent.